[No. 19820-7-II. Division Two. October 17, 1997.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID H. GOBLE, *Appellant.*

*Thomas E. Doyle* and *Robert M. Quillian,* for appellant (appointed counsel for appeal).

*Jeremy R. Randolph, Prosecuting Attorney,* and *Melanie Tratnik, Deputy,* for respondent.

MORGAN, J. — David H. Goble appeals from a drug conviction. The drugs were found when his home was searched pursuant to a search warrant. He claims the warrant was issued without probable cause. We agree and reverse.

At all times material to this case, Goble and Loraine Stamper resided at 206 1st Street, Morton, Washington.[1] Stamper also rented PO Box 338 at the Morton Post Office.

On January 8, 1993, a confidential source told Officer Dan Mortensen of the Morton Police Department that Goble often received illegal drugs through the mail. According to the source, the drugs were sent from California to a post office box in Morton.

---

[1] In the trial court, there was some question about the accuracy of this address. That question, however, is not material on appeal.

Mortensen contacted United States Postal Inspector Martin Pfefer, who verified that Stamper was currently renting PO Box 338 at the Morton Post Office. Pfefer asked the Morton postmaster to watch for, and notify him of, any packages addressed to that box.

On May 20, 1993, the Morton postmaster notified Pfefer's office that a package addressed to Goble at PO Box 338 had arrived at the Morton Post Office. Due to a mix-up, there was no further investigation at that time.

On June 1, 1993, the same confidential source told Mortensen that Goble had recently received a shipment of controlled substances and was "back in business."[2]

On June 2, 1993, the Morton postmaster advised that a woman had mailed a package from the Morton Post Office to Watsonville, California. The package bore a return address of Dave Goble, PO Box 338, Morton, Washington, and "felt like it contained a bundle of currency."[3]

On June 3, 1993, Pfefer asked the mail handling facility at Sea-Tac Airport to watch for, and notify him of, any packages addressed to PO Box 338 in Morton.

On June 8, 1993, the Sea-Tac mail facility advised that it was in possession of a package addressed to Goble at PO Box 338. After a drug dog alerted on the package, Pfefer obtained a concededly valid federal search warrant for the package. When he executed the warrant, he found methamphetamine.

On June 9 at 7:43 a.m., Mortensen called a Lewis County magistrate and requested a search warrant for Goble's home. After relating the facts already set forth, he said that he and Pfefer had restored the package to its original condition, and that they planned to deliver it to PO Box 338 in Morton. Thereafter, they would "maintain a continual surveillance of the package, until such time as the recipient takes possession of the package and transports the package to his/her residence, at 206 1st [S]treet,

[2]Clerk's Papers at 38.

[3]Clerk's Papers at 38.

Morton, WA 98356."[4] When that occurred, they would know that "evidence of Violation of the Uniform Controlled Substance[s] Act [is] located at, 206 1st [S]treet,"[5] and they would execute the search warrant.

Before issuing the warrant, the magistrate questioned the relationship between the package of drugs and Goble's house.

> Magistrate: . . . What happens . . . if that package is picked up by a person who does not take it to [Goble's] residence?

> Mortensen: Then we will have to follow the . . . package to another residence and request an additional search warrant for that residence.

> Magistrate: All right, I will grant the search warrant, finding that there is probable cause to believe that a crime may be committed, or may be in the process of being committed, . . . at the address you've requested for . . . upon the precondition that the package which was picked [up] from the post office box is taken to that residence. *If it is not taken to the residence, then there [are] no grounds for me to issue any order based on what you've told me today.* In other words, if somebody comes and takes that package to another residence, you're going to need to get another search warrant.[6]

Mortensen then read aloud a proposed form of warrant. Because it did not say that the search could be conducted only if the package was first delivered to the house, the magistrate directed that language to that effect be inserted. He explained:

> That's a pre-condition to the order, since there's nothing at this stage . . . we don't have an affidavit from somebody who's seen drugs dealt or in the residence[.] [*W*]*ithout that package*

---

[4]Clerk's Papers at 45-46.

[5]Clerk's Papers at 46.

[6]Clerk's Papers at 47-48 (emphasis added).

*of drugs going to that residence there's no probable cause to search that residence.*[7]

Mortensen altered the proposed form of warrant to comply with the magistrate's ruling, and the magistrate approved it on June 9 at 9:16 a.m. It authorized a search of Goble's house on grounds "there is probable cause to believe that said controlled substances are present in/on the above-described residence, *if the package described is transported to 206 1st[ ] [S]treet.*"[8]

Pfefer and Mortensen delivered the package of drugs to the Morton Post Office, and Goble picked it up on June 9 at 10:37 a.m. He then walked toward his house while a Morton police officer "maintained nearly constant surveillance."[9] The officer failed to see Goble enter the house with the package, but he soon saw Goble come *out* of the house, talk briefly with a person on the street, then re-enter the house.

On June 9 at approximately 11:10 a.m., Mortensen, Pfefer and other officers executed the warrant. They found methamphetamine.

On February 28, 1995, the State charged Goble with possession of methamphetamine with intent to deliver.[10] Goble filed a motion to suppress, claiming that the magistrate had issued the search warrant without probable cause to believe that illegal drugs were in the house. The trial court denied the motion and, after a bench trial, entered a judgment of guilty. Goble then filed this appeal.

The sole issue is whether the search warrant for the home was supported by probable cause. Goble says it was not because, "at the time of the issuance of the warrant[,]

---

[7]Clerk's Papers at 49 (emphasis added).

[8]Clerk's Papers at 51 (emphasis added).

[9]Clerk's Papers at 12.

[10]The record does not explain the 21-month delay between search and charge.

it was sheer speculation whether evidence of a crime might be found in the place to be searched."[11]

■ A neutral and detached magistrate must determine whether there is probable cause to issue a search warrant.[12] Moreover, he or she must determine probable cause *at the time the warrant issues*. The Fourth Amendment itself provides, "[N]o warrant[ ] shall *issue*, but upon probable cause,"[13] and it is axiomatic that the probable cause needed to support a warrant must be judged solely on facts presented to the issuing magistrate.[14] Facts arising later are immaterial, unless they were reasonably inferable at the time of the issuance of the warrant (in which case, they were made known at the time of the issuance of the warrant).[15]

■ Probable cause has at least two necessary aspects. One is whether a reasonable person, given the evidence

---

[11]Br. of Appellant at 9.

[12]*Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 326-27, 99 S. Ct. 2319, 60 L. Ed. 2d 920 (1979); *Coolidge v. New Hampshire*, 403 U.S. 443, 449-50, 91 S. Ct. 2022, 29 L. Ed. 2d 564 (1971); *Johnson v. United States*, 333 U.S. 10, 13-14, 68 S. Ct. 367, 92 L. Ed. 436 (1948).

[13]Emphasis added.

[14]*E.g., Aguilar v. Texas*, 378 U.S. 108, 109 n.1, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964) (citing *Giordenello v. United States*, 357 U.S. 480, 486, 78 S. Ct. 1245, 1250, 2 L. Ed. 2d 1503 (1958)) ("It is elementary that in passing on the validity of a warrant, the reviewing court may consider only information brought to the magistrate's attention."); *Spinelli v. United States*, 393 U.S. 410, 413 n.3, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); *State v. Patterson*, 83 Wn.2d 49, 61, 515 P.2d 496 (1973) ("Whether a search with a warrant is reasonable . . . depends upon all of the circumstances shown to have been connected with it and as shown under oath, either in writing or orally, to the judicial officer who issued it."); *State v. Duncan*, 81 Wn. App. 70, 74, 912 P.2d 1090 (court reviewing probable cause "considers the information presented to the issuing magistrate"), *review denied*, 130 Wn.2d 1001 (1996); *State v. Condon*, 72 Wn. App. 638, 642, 865 P.2d 521 (1993), *review denied*, 123 Wn.2d 1031 (1994); *State v. Remboldt*, 64 Wn. App. 505, 509, 827 P.2d 282, *review denied*, 119 Wn.2d 1005 (1992); *State v. Estorga*, 60 Wn. App. 298, 304, 803 P.2d 813, *review denied*, 116 Wn.2d 1027 (1991); *State v. Stephens*, 37 Wn. App. 76, 80, 678 P.2d 832, *review denied*, 101 Wn.2d 1025 (1984); *City of Seattle v. Leach*, 29 Wn. App. 81, 85, 627 P.2d 159 (1981).

[15]*Cf. State v. Mance*, 82 Wn. App. 539, 542, 918 P.2d 527 (1996) (probable cause may not be based on information obtained after the event for which probable cause is required); *State v. Kerens*, 9 Wn. App. 449, 455, 513 P.2d 63 (same), *review denied*, 83 Wn.2d 1003 (1973).

presented, would believe that the item sought is contraband or other evidence of a crime (in other words, that a crime has occurred or is occurring, and that the item sought is evidence of that crime). If the answer is yes, the police have a valid reason to seize the item sought.[16] The other is whether a reasonable person, given the evidence presented, would believe that the item sought is likely to be found at the place to be searched. If the answer is yes, the police have a valid reason to search that place.[17] Thus, probable cause requires a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched.[18]

 The latter nexus is the one in issue here.[19] As already seen, it involves the relationship between the item to be seized and the place to be searched. But should the magistrate assess the relationship that *presently* exists (i.e., the relationship that exists at the time of the warrant's issuance)? Or, should the magistrate assess the relationship that *will* exist at the time of the warrant's execution?

According to many courts, including 10 of the 11 numbered federal circuits, a magistrate should assess the relationship that will exist at the time of the warrant's execution.[20] Thus, probable cause is not necessarily defeated by the fact that the item to be seized is not yet at

---

[16]*State v. Grannis*, 84 Wn. App. 546, 552, 930 P.2d 327 (1997); *State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995); *State v. Smith*, 93 Wn.2d 329, 352, 610 P.2d 869, *cert. denied*, 449 U.S. 873 (1980); *State v. O'Neil*, 74 Wn. App. 820, 824, 879 P.2d 950 (1994), *review denied*, 125 Wn.2d 1016 (1995); *see also Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 301-02, 87 S. Ct. 1642, 18 L. Ed. 2d 782 (1967).

[17]*Grannis*, 84 Wn. App. at 552; *Cole*, 128 Wn.2d at 286; *O'Neil*, 74 Wn. App. at 824-25.

[18]Wayne R. LaFave, Search and Seizure § 3.7(d), at 372 (3d ed. 1996).

[19]The first question is not in issue because it is undisputed that the package intercepted at the airport, and later delivered to the Morton Post Office, contained contraband.

[20]*United States v. Hugoboom*, 112 F.3d 1081 (10th Cir. 1997); *United States v. Becerra*, 97 F.3d 669, 671 (2d Cir. 1996), *cert. denied sub nom. Moreno v. United States*, 519 U.S. 1137, 117 S. Ct. 1006, 136 L. Ed. 2d 885 (1997); *United States v.*

the place to be searched when the magistrate issues the warrant; it is enough that when the magistrate issues the warrant, he or she has probable cause to believe that the item to be seized *will be* at the place to be searched when the warrant is executed and the search occurs.

The reasoning of these courts has been expressed in various ways. For example, one court has said, "The probable cause doctrine does not require that the contraband to be seized must presently be located at the premises to be searched, only that [at the time of the issuance of the warrant] there is probable cause to believe that a crime has been (or is being) committed and that evidence of it can likely be found at the described locus *at the time of the search*."[21] Another court has said that a warrant does not lack probable cause "as long as the evidence creates substantial probability that the seizable property will be on the premises when searched . . . ."[22] Other courts have said that a warrant will be valid if, at the time of its issuance, the items to be seized are on a "sure course" to the place to be searched.[23] At bottom, each of these statements means that a magistrate, at the time he or she issues a warrant, must have probable cause to believe that the

*Leidner*, 99 F.3d 1423, 1426 (7th Cir. 1996), *cert. denied*, 520 U.S. 1169 (1997); *United States v. Ruddell*, 71 F.3d 331, 333 (9th Cir. 1995); *United States v. Moetamedi*, 46 F.3d 225, 228 (2nd Cir. 1995); *United States v. Bieri*, 21 F.3d 811, 814-15 (8th Cir.), *cert. denied*, 513 U.S. 878 (1994); *United States v. Gendron*, 18 F.3d 955, 965 (1st Cir.), *cert. denied*, 513 U.S. 1051 (1994); *United States v. Ricciardelli*, 998 F.2d 8, 11 (1st Cir. 1993); *United States v. Goodwin*, 854 F.2d 33, 36 (4th Cir. 1988); *United States v. Wylie*, 919 F.2d 969, 974 (5th Cir. 1990); *United States v. Lowe*, 575 F.2d 1193, 1194 (6th Cir.), *cert. denied*, 439 U.S. 869 (1978); *see also United States v. Nixon*, 918 F.2d 895, 903 n.6 (11th Cir. 1990) (dicta); *People v. Sloss*, 34 Cal. App. 3d 74, 109 Cal. Rptr. 583, 588 (1973); *People v. Glen*, 30 N.Y.2d 252, 282 N.E.2d 614, 617, 331 N.Y.S.2d 656 (1972); *People v. Santa Clara County Superior Court*, 103 Cal. Rptr. 874, 878 (Cal. Ct. App. 1972).

[21]*Ricciardelli*, 998 F.2d at 10 (quoted in WAYNE R. LaFAVE, SEARCH & SEIZURE, § 3.7(c), at 364); *see also Lowe*, 575 F.2d at 1194 ("[c]ontraband does not have to be presently located at the place described in the warrant if there is probable cause to believe that it will be there when the search warrant is executed").

[22]*Glen*, 282 N.E.2d at 617.

[23]*Ruddell*, 71 F.3d at 333; *United States v. Hendricks*, 743 F.2d 653, 655 (9th Cir. 1984), *cert. denied*, 470 U.S. 1006 (1985); *see also Ricciardelli*, 998 F.2d at 12 ("contraband must be on a sure and irreversible course to its destination").

item to be seized will be at the place to be searched at the time the search occurs.

This reasoning seems sensible. Suppose, for example, that a magistrate is presented with probable cause to believe that contraband is presently located in a house—*and also* probable cause to believe that all traces of the contraband will be gone before the police can possibly reach the house and conduct a search. In other words, suppose that the magistrate has probable cause to believe that the item to be seized is presently at the place to be searched, but will no longer be there when the search, if authorized, is conducted. Could the magistrate properly issue a search warrant for the house? We think not, for it is reasonable to search a place only when there is cause to believe that the item sought will be found there *at the time of the search.* Accordingly, the real question when a warrant issues is not whether the items to be seized are *presently* in the place to be searched, but whether they *will* be there when the search is conducted.

Obviously, this does not mean that a magistrate should ignore, when he or she is issuing a warrant, whether the item to be seized is presently at the place to be searched. The present location of the item to be seized is often an important indicator of where the item will be at the time of the search. Hence, present location is an important—but not always dispositive—factor to be considered when determining probable cause.

Based on the foregoing, we hold that probable cause requires a nexus between the items to be seized and the place to be searched. That nexus must exist at the time the warrant issues. It is established if, when the warrant issues, the magistrate has information that would cause a reasonably prudent person to believe that the items to be seized will probably be found in the place to be searched at the time the search is conducted. Thus, the question here is whether the Lewis County magistrate, *at the time he issued the warrant,* had probable cause to believe that contraband would be present in Goble's house when the warrant was served.

In our view, he did not. When the magistrate issued the warrant, he had no information that Goble had previously dealt drugs out of his house, rather than out of a different place (for example, a tavern, his car, or a public park). He had no information that Goble had previously stored drugs at his house, rather than in some other place (for example, in his car, at his place of employment, at a friend's house, or buried in the woods). He had no information that Goble had previously transported drugs from PO Box 338 to the house, or that Goble had previously said he intended to do so. In sum, he had no information from which to infer, *at the time he issued the warrant*, that Goble would take the package from the post office to his house, or that the package would probably be found in the house when the warrant was executed.

As already seen above, the magistrate himself recognized these deficiencies. At one point, he asked the officer, "What happens . . . if that package is picked up by a person who does not take it to [Goble's] residence[?]," and the officer replied, "Then we will have to follow the . . . package to another residence and request an additional search warrant, for that residence."[24] At another point, the magistrate stated, "If [the package] is not taken to the residence, then there [are] no grounds for me to issue any order based on what you've told me today. In other words, if somebody comes and takes that package to another residence, you're going to need to get another search warrant."[25] At a third point, the magistrate stated, "[W]e don't have an affidavit from somebody who's seen drugs dealt or in the residence[.] [W]ithout that package of drugs going to that residence there's no probable cause to search that residence."[26] In each of these instances, the magistrate was saying, in effect, that the facts then available to him did not warrant a *present* inference that Goble would take

[24]Clerk's Papers at 47.

[25]Clerk's Papers at 47-48.

[26]Clerk's Papers at 49.

the package from the post office to his house, but that this void might be filled *later,* if and when the police saw Goble take the package to his house. We conclude that the facts made known to the magistrate did not establish, at the time of the issuance of the warrant, the required nexus between the items to be seized and the place to be searched; and, as a result, that the warrant was improvidently issued.

This conclusion is supported by the federal cases dealing with anticipatory warrants issued for a defendant's home. Generally, the federal courts have approved the nexus between the item to be seized and the place to be searched when, at the time of the issuance of the warrant, the magistrate knew that the police or their agents would soon deliver drugs to the defendant's home.[27] Generally, however, the federal courts have disapproved the nexus when, at the time of the issuance of the warrant, the magistrate knew only that the defendant would pick up the package at a location remote from his home, and had no information concerning whether the defendant would then take the package to his home or to some other place.[28] This case falls in the latter category, and we conclude that the motion to suppress should have been granted.[29]

Reversed.

---

[27]*Hugoboom,* 112 F.3d at 1083; *Leidner,* 99 F.3d at 1429; *Becerra,* 97 F.3d at 670-71; *Ruddell,* 71 F.3d at 332-33; *Bieri,* 21 F.3d at 814-15; *Gendron,* 18 F.3d at 965; *United States v. Tagbering,* 985 F.2d 946, 948-50 (8th Cir. 1993); *United States v. Garcia,* 882 F.2d 699, 701-04 (2d Cir.), *cert. denied sub nom. Grant v. United States,* 493 U.S. 943 (1989); *United States v. Washington,* 852 F.2d 803, 804 (4th Cir.), *cert. denied,* 488 U.S. 974 (1988); *United States v. Hale,* 784 F.2d 1465, 1467-69 (9th Cir.), *cert. denied,* 479 U.S. 829 (1986); *Lowe,* 575 F.2d at 1193-94.

[28]*Ricciardelli,* 998 F.2d at 13; *Hendricks,* 743 F.2d at 655; *cf. Rivera v. United States,* 928 F.2d 592, 597, 603-04 (2d Cir. 1991) (upheld warrant based on information from an informant that a shipment of cocaine would be delivered by members of the drug organization and received at the search location on a particular day).

[29]Having resolved this appeal on the basis that the facts made known to the magistrate failed to establish a sufficient nexus between the items to be seized and the place to be searched, we do not reach the question whether, if the facts had established a sufficient nexus, the magistrate would have been required, or

Houghton, C.J., and Seinfeld, J., concur.

merely permitted, to condition service of the warrant on an officer seeing some-
one take the package into Goble's home.