[Nos. 27107-9-II; 27108-7-II. Division Two. May 3, 2002.]

THE STATE OF WASHINGTON, *Appellant*, v. LORENA J. MCGOVERN, *Respondent*.

THE STATE OF WASHINGTON, *Appellant*, v. CHRISTOPHER SEAN KING, *Respondent*.

496

*Juelie B. Dalzell, Prosecuting Attorney,* and *C. Danny Clem, Deputy,* for appellant.

*James M. Bendell* and *Craddock D. Verser,* for respondents (appointed counsel for appeal).

MORGAN, J. — The question central to this appeal is whether an affidavit for a search warrant contained facts and circumstances from which a reasonable person could infer that the items to be seized would probably be found at the defendant's home. In our view, the answer is yes.

At 8 A.M. on October 10, 2000, Trooper Keith Nestor of the Washington State Patrol stopped a car for speeding. As he walked up to the car, he saw marijuana in plain view on the front passenger seat. He arrested the driver, Christopher Sean King.

Nestor and another trooper searched the car incident to the arrest. They found several baggies of consumable marijuana, two baggies of stems and leaves, a digital scale, and scissors with "pieces of marijuana on the blades."[1] The consumable marijuana weighed 182 grams.

After waiving his *Miranda*[2] rights, King said that he had bought the marijuana in Oregon; that he had bought more than he needed for his own use; and that he was intending to sell some. He said that he was on his way from home to work, and he denied growing marijuana at home. After exercising his right not to consent to a search of his home, he volunteered, according the troopers, that "there's stuff there that I don't want you to find."[3] A moment later, he added that the "stuff" was a single gun that he had recently received from a relative and had not yet "registered."[4] He

---

[1] Clerk's Papers (CP) at 13.

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[3] CP at 13, 17 (transcript, telephonic search warrant affidavit).

[4] *Id*. at 13. The record does not show what registration scheme, if any, King was alluding to.

was "concerned . . . that his wife not be involved in this situation," for "she had nothing to do with this."[5]

At 2 P.M. on October 10, Detective Grall of the Washington State Patrol telephoned a magistrate and requested a warrant to search King's home. After stating the above facts under oath, he added that in his experience a person who sells marijuana often keeps the drug and associated paraphernalia at his or her residence; that such a person can use scissors to prune marijuana plants; and that the distance from King's residence to where King was stopped is about 12 miles. Noting that "[t]he issue here is really is there a nexus from his vehicle where the marijuana was found to his home,"[6] the magistrate issued the warrant.

At about 5:00 P.M. on October 10, officers executed the warrant. They found 8 growing marijuana plants, 10 harvested plants that were drying, and some gardening pots in which marijuana "stumps" were planted.[7]

On November 6, 2000, the State charged King with unlawfully manufacturing the marijuana found at the house. It also charged his wife, Lorena McGovern, with that crime. No other charges are in issue here.[8]

On November 11, 2000, King and McGovern moved to suppress the marijuana found at the house. Relying on *State v. Thein*,[9] they argued that the facts did not show "a

---

[5] *Id.* at 13, 17.

[6] *Id.* at 18.

[7] *Id.* at 22.

[8] On November 6, 2000, the State also charged King and McGovern with unlawfully possessing, with intent to deliver, the marijuana found at the house. On February 23, 2001, the State charged King alone with possessing and intending to deliver the marijuana found in his car. The record on appeal does not show whether these other charges have been disposed of or are still pending in the trial court. When questioned at oral argument, the prosecutor assured us they had been disposed of, and thus that the case is appealable. It appears, then, that these other charges have been adjudicated, dismissed, or abandoned.

[9] *State v. Thein*, 138 Wn.2d 133, 977 P.2d 582 (1999).

'reasonable nexus' . . . between the place to be searched and the alleged illegal activity."[10]

On January 31, 2001, the trial court granted the motion to suppress. It held that "[t]here was no sufficient basis in fact set forth in Detective Grall's statement from which to conclude that unlawful activity would likely be found at the place to be searched."[11] It denied the State's motion for reconsideration, and the State filed this appeal.

■ The Fourth Amendment requires that a search warrant issue only upon probable cause.[12] For purposes of review, probable cause to search exists when the application for a search warrant contains facts and circumstances from which a reasonable person could infer that criminal activity is probably occurring, and that evidence of such activity will probably be found at the place to be searched when the search occurs.[13] In other words, probable cause to search requires (1) " 'a nexus between criminal activity and the item to be seized,' " and (2) " 'a nexus between the item to be seized and the place to be searched.' "[14]

■ The second nexus is the one at issue here. It cannot be met merely by showing that a drug dealer lives at a particular residence and that drug dealers commonly cache drugs where they live.[15] It can be met by showing *not only* that a drug dealer lives at a particular residence and that drug dealers commonly cache drugs where they live, *but also* "additional facts" from which to reasonably infer that

---

[10] CP at 9.

[11] *Id.* at 30.

[12] U.S. Const. amend. IV; *Thein*, 138 Wn.2d at 140; *State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995).

[13] *Thein*, 138 Wn.2d at 140; *Cole*, 128 Wn.2d at 286; *State v. Goble*, 88 Wn. App. 503, 509-11, 945 P.2d 263 (1997).

[14] *Thein*, 138 Wn.2d at 140 (quoting *Goble*, 88 Wn. App. at 509).

[15] *Thein*, 138 Wn.2d at 151; *Goble*, 88 Wn. App. at 512-13; *State v. Olson*, 73 Wn. App. 348, 357, 869 P.2d 110, *review denied*, 124 Wn.2d 1029 (1994); *State v. Dalton*, 73 Wn. App. 132, 140, 868 P.2d 873 (1994); *State v. Rangitsch*, 40 Wn. App. 771, 780, 700 P.2d 382 (1985).

*this* drug dealer probably keeps drugs at *his or her* residence.[16]

In this case, Grall's affidavit clearly showed probable cause to believe (1) King was selling marijuana and (2) King lived at his residence. The question is whether Krall's affidavit shows enough *additional* facts to establish the required nexus between King's criminal activity and his residence. The question is close, and we are not surprised that the magistrate and the trial judge reached different conclusions. For the reasons that follow, we side with the magistrate.

When King was stopped, he told the troopers that he had just left home to go to work; that he lived about 12 miles away; and that he had bought the marijuana in Oregon. Clearly then, he had been at his residence after buying the marijuana but before being stopped.

When King was stopped, he told the officers that he had bought too much marijuana for personal use. He had 182 grams with him, which is equivalent to 6.4 ounces, .4 of a pound, or .182 of a kilogram. That is not an extraordinarily large amount, and the magistrate was entitled to believe he had more elsewhere.

When King was stopped, he was asked if he would consent to a search of his residence. He said no but then volunteered, "[T]here's stuff there that I don't want you to find."[17] Although the magistrate could not consider his refusal to consent,[18] the magistrate could consider his volunteered statement; combine that statement with all the other facts and circumstances (including, as a factor not sufficient by itself, the generalization that drug dealers

---

[16] WAYNE R. LAFAVE, SEARCH AND SEIZURE, § 3.7(d), at 378-79 (3d. ed. 1996) (citing numerous cases).

[17] CP at 13.

[18] King had the right to refuse consent, and his exercise of that right may not be used to establish probable cause. *Florida v. Bostick*, 501 U.S. 429, 437, 111 S. Ct. 2382, 2387, 115 L. Ed. 2d 389 (1991) (suspect's mere assertion of constitutional right cannot constitute the *sole* basis for establishing probable cause for a search warrant).

commonly cache drugs where they live); and infer that King probably had marijuana at his house.

King and McGovern argue that even though King said that he had "stuff" at his house, he also said the "stuff" was a gun; thus, the first statement does not tend to show that King probably had *marijuana* at his house. Their necessary premise is that the magistrate could not credit the first statement without also crediting the second statement. That premise, however, is flawed. The magistrate had both the right and the duty to assess and weigh the various statements. In doing that, he was entitled to observe that the first statement (about "stuff" being in the house) was against King's interest. He was entitled to observe that the second statement (about the "stuff" being a gun) was self-serving to the extent it caused the first statement not to include marijuana. He was entitled to observe that the word "stuff" does not usually refer to a single gun.[19] Thus, he was also entitled to credit the first statement without also crediting the second; to take the first statement in conjunction with all the other circumstances; and to infer that King probably had marijuana in his house.

The judgment of dismissal is reversed, the order of suppression is reversed, and the case is remanded for further proceedings.

HUNT, C.J., and ARMSTRONG, J., concur.

---

[19] *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2269 (1986).