60 P.3d 95 (2002)
114 Wash.App. 486
STATE of Washington, Respondent,
v.
Malcolm HAMPTON, Appellant.
No. 26357-2-II.
Court of Appeals of Washington, Division 2.
November 26, 2002.
As Amended December 20, 2002.
Rita Joan Griffith, Kevin R. Cole, Attorney at Law, Seattle, WA, Leslie E. Talzin, Attorney at Law, Tacoma, WA, for Appellant.
Kit Proctor, John M. Neeb, Barbara Corey-Boulet Deputy Pros. Attorneys, Tacoma, WA, for Respondent.

OPINION PUBLISHED IN PART
MORGAN, P.J.
The main question in this appeal is whether a properly issued warrant to search the *96 defendant's person for drugs authorizes a reasonably executed search not only of most of his person, but also of the area between his penis and scrotum. Answering yes, we affirm.
Within 72 hours of January 28, 2000, a confidential informant (CI) reported to the police that he/she had seen Hampton dealing cocaine in Tacoma. He/she reported that Hampton had been in possession of numerous small "rocks" of crack cocaine, that Hampton had been keeping the rocks in a container on his person, and that he/she had seen Hampton in possession of cocaine on at least ten prior occasions.
On January 28, Officer Hayes of the Tacoma Police Department applied for a warrant to search Hampton's person for controlled substances. In an accompanying affidavit, Hayes stated that the CI had successfully performed two controlled buys; that the CI had been involved in the local drug culture for over five years; that the CI was familiar with crack cocaine; that the CI had provided information leading to the issuance of two search warrants; and that the CI had "assisted in" obtaining charges and arrest warrants in more than 90 unlawful delivery cases. Hayes also stated that "in [my] training and experience, street level controlled substance traffickers commonly conceal drugs in their underwear and groin area."[1]
The same day, a magistrate issued the requested search warrant. It commanded Hayes "to detain and search ... [t]he person of a black male known as Malcom [sic] Hampton," and "to seize all controlled substances there found[.]"[2]
On February 3, 2000, Hayes and Officer Krause saw Hampton at a McDonald's restaurant. They took him to an unmarked police van parked across the street. The van had tinted windows, so it was difficult for someone outside to see in. They put Hampton on the van's rear bench seat and searched his pockets and shoes. When they did not find contraband there, they searched his genital area and discovered, between his penis and scrotum, a plastic bag containing 15 rocks of crack cocaine. They also found $629 in his wallet.
On February 4, 2000, Hampton was charged with unlawful possession of cocaine with intent to deliver. Before trial, he moved to suppress the cocaine. After a hearing, the trial court denied his motion.
On May 30, 2000, trial began. Hampton challenged two potential jurors for cause, but the trial court rejected both challenges. The State called two witnesses: Hayes and a drug expert from the state crime laboratory. The defense elected not to present any evidence. When the trial court instructed the jury, it declined to give Hampton's Proposed Jury Instructions 1 and 2. The jury found Hampton guilty as charged, and the trial court imposed a standard range sentence of 102 months.
Although Hampton raises several issues on appeal, the only one warranting publication is whether the trial court erred by denying his motion to suppress. That issue is discussed in Section I. The remaining issues are discussed in Section II.

I.
Hampton argues that he was entitled to suppress the cocaine because the "strip search" of his person violated the Fourth Amendment to the United States Constitution and Article I, § 7 of the Washington Constitution. Essentially, he asserts (A) that the warrant for his person was improperly issued, and (B) that the warrant for his person was improperly executed. We address issuance before execution.

A.
Hampton attacks the warrant's issuance on two levels. First, he asserts that the warrant did not properly authorize a search of his person. Second, he asserts that even if the warrant properly authorized a search of his person, it did not authorize a search of the area between his penis and scrotum.

*97 1.
Hampton argues that the warrant did not reasonably authorize a search of his person for drugs.[3] This is true, he seems to claim, because the affidavit supporting the warrant did not show probable cause to believe he had drugs on his person.
An affidavit shows probable cause if it contains facts sufficient for a reasonable person to conclude that evidence of criminal activity will be found in the place to be searched.[4] Thus, it must show "a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched."[5] When the affidavit is based on hearsay, it must show that the informant "personally has seen the facts asserted" and is probably trustworthy.[6]
In this case, Hayes' affidavit shows that on ten prior occasions the CI had seen Hampton in possession of cocaine; that in the preceding 72 hours the CI had seen Hampton dealing cocaine "out in the open"; that on the latter occasion the CI had seen Hampton in possession of numerous small pieces of cocaine in a container that he kept on his person; and that the CI had an extensive "track record" of providing reliable information.[7] These facts were sufficient for a reasonable person to conclude that illegal drugs would probably be found on Hampton's person, and thus they were sufficient to show probable cause. Accordingly, the warrant properly authorized a search of Hampton's person for drugs.

2.
Hampton argues that even if the warrant properly authorized a search of his person for drugs, it did not properly authorize a search of his genitalia for drugs. His premise is that even if a warrant properly authorizes a search of one's person for drugs, it does not properly authorize, without more, a strip search of one's external genitalia.
This premise runs counter to State v. Colin.[8] In that case, a confidential informant supplied probable cause to believe the defendant had drugs on his person. The police applied for a warrant to search the defendant's person,[9] but they "did not articulate reasons why a strip search was necessary and reasonable under the circumstances."[10] The court issued the requested warrant,[11] which the police then executed at the defendant's residence. The police took the defendant into a bedroom, searched his person including his genital area, and seized heroin they found in his underwear. Division Three upheld the search, stating:
Here, a search warrant had been issued which expressly authorized the search of a Hispanic male matching Mr. Colin's description.
...
The search warrant was executed for the express purpose of procuring controlled substances likely to be found on ... the person described in the warrant. Such substances could be readily concealed on the person so that they would not be found without a strip search. The scope of the search, while more intrusive than a search of a person's outer garments, was justified *98 by the State's interest in obtaining criminal evidence.[[12]]
Hampton's premise is not supported by any authority of which we are aware. He relies heavily on United States v. Nelson,[13] but that case involved a body cavity search, not a strip search; thus, it is not pertinent here.[14] He cites nothing else, and we have found nothing else.
Most importantly, Hampton's premise runs counter to the reasons for which some courts have imposed special requirements for strip searches. A person is "strip searched" if he or she is made to "remove or arrange some or all of his or her clothing so as to permit an inspection of the genitals, buttocks, anus, or undergarments of the person or breasts of a female person."[15] "The intrusion into one's personal dignity occasioned by such searches requires that some justifiable basis exists."[16] Such basis is often lacking when officers search a person at the national border, incident to lawful arrest, or incident to booking, because the officers are not required to have even an articulable suspicion (much less probable cause to believe) that the person is possessing contraband or evidence of crime in or under his or her clothing.[17] Such a basis is automatically present when officers have obtained an otherwise lawful warrant to search a defendant's person for drugs, for a neutral magistrate will already have determined that the defendant is probably possessing drugs in or under his or her clothing. Accordingly, special safeguards (i.e., safeguards beyond the usual probable cause and warrant requirements) are not needed when officers conduct a strip search pursuant to a warrant based on probable cause to search a defendant's person for drugs.
We do not overlook, though we do reject, Hampton's reliance on State v. Thein.[18]Thein precludes a finding of probable cause to search the house of a suspected drug dealer when the only link between his dealing and his house is an officer's generalized statement that drug dealers often keep drugs at home. Thein does not preclude such a finding when the link between his dealing and his house is provided by information from a CI that meets both prongs of Aguilar-Spinelli.[19] Nor, analogously, does Thein preclude a finding of probable cause to search the person of a suspected drug dealer when the link between his dealing and his person is provided by information from a CI *99 that meets both prongs of Aguilar-Spinelli. Based on the CI's information in this case, the magistrate had probable cause to command a search of Hampton's entire person, with or without Hayes' statement that drug dealers commonly conceal drugs in their underwear or groin areas. We conclude that when the warrant here was issued, it properly authorized a search of the area between Hampton's penis and scrotum.

B.
Having concluded that the warrant properly authorized the search, we turn to whether the warrant was properly executed. Any warrant must be executed reasonably.[20] At a minimum, this means that a warrant-authorized strip search[21] must be conducted in a reasonably private place, without unnecessary touching, by persons of the defendant's gender.[22]
These requirements were met here. The van had tinted windows so passersby could not see in; the officers did not engage in unnecessary or abusive touching; and the officers and Hampton were all males. We hold that the warrant was properly issued and executed, and that the motion to suppress was properly denied.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: BRIDGEWATER and ARMSTRONG, JJ.
NOTES
[1] Ex. 1 (Complaint for Search Warrant) at 2.
[2] Ex. 1 (Search Warrant) at 1-2.
[3] Br. of Appellant at 13; Reply Br. of Appellant at 2.
[4] State v. Perrone, 119 Wash.2d 538, 551, 834 P.2d 611 (1992).
[5] State v. Thein, 138 Wash.2d 133, 140, 977 P.2d 582 (1999) (citing State v. Goble, 88 Wash.App. 503, 509, 945 P.2d 263 (1997)) (citing WAYNE R. LAFAVE, SEARCH AND SEIZURE § 3.7(d) at 372 (3d ed.1996)).
[6] State v. Jackson, 102 Wash.2d 432, 437, 688 P.2d 136 (1984).
[7] See Jackson, 102 Wash.2d at 437, 688 P.2d 136; State v. Colin, 61 Wash.App. 111, 113-14, 809 P.2d 228, review denied, 117 Wash.2d 1009, 816 P.2d 1223 (1991).
[8] Colin, 61 Wash.App. 111, 809 P.2d 228.
[9] The officer sought a warrant for the defendant's residence as well as his person, but that is not pertinent here.
[10] Colin, 61 Wash.App. at 115, 809 P.2d 228.
[11] The court issued the warrant for the defendant's residence as well his person, but that is not pertinent here.
[12] Colin, 61 Wash.App. at 115-16, 809 P.2d 228.
[13] United States v. Nelson, 36 F.3d 758 (8th Cir. 1994).
[14] Although RCW 10.79.070 does not apply here, we adopt by analogy its distinction between strip searches and body cavity searches. To conduct a "strip search" is to remove or arrange some or all of a person's clothing so as to permit an inspection of the person's genitals, buttocks, anus, or undergarments, or of a female person's breasts. RCW 10.79.070(1). To conduct a "body cavity search" is to touch or probe a person's body cavitya person's stomach or rectum, or a female person's vaginawith or without penetration. RCW 10.79.070(2), (3). As this case does not involve a body cavity search, nothing said herein applies to such a search.
[15] RCW 10.79.070(1). Although this statute technically does not apply here, State v. Rulan C., 97 Wash.App. 884, 887, 970 P.2d 821 (1999), State v. Audley, 77 Wash.App. 897, 908-09, 894 P.2d 1359 (1995), we use its definition of "strip search" as a matter of common law.
[16] 2 LAFAVE, supra note 5, § 5.3(c) at 144 (citing Tinetti v. Wittke, 479 F.Supp. 486 (E.D.Wis. 1979), aff'd, 620 F.2d 160 (7th Cir.1980)).
[17] Border search: Colin, 61 Wash.App. 111, 809 P.2d 228 (citing United States v. Charleus, 871 F.2d 265, 267 (2d Cir.1989)) (border search is "reasonable" simply because it occurs at border); United States v. Ramsey, 431 U.S. 606, 616, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977); see also United States v. Montoya de Hernandez, 473 U.S. 531, 538, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985)

("Routine searches of the persons and effects of [border] entrants are not subject to any requirement of reasonable suspicion, probable cause, or warrant ..."). Search incident to arrest: United States v. Robinson, 414 U.S. 218, 235, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (lawful custodial arrest supplants need for probable cause to search). Booking search: 3 LAFAVE, supra note 5, § 5.3(a) at 109 (citing Robinson, 414 U.S. 218, 94 S.Ct. 494, 38 L.Ed.2d 427) (booking search commonly upheld as search incident to arrest or as inventory search).
[18] Thein, 138 Wash.2d 133, 977 P.2d 582.
[19] Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1969).
[20] State v. Myers, 102 Wash.2d 548, 552, 689 P.2d 38 (1984); State v. Coyle, 95 Wash.2d 1, 6, 621 P.2d 1256 (1980); State v. Young, 76 Wash.2d 212, 214-15, 455 P.2d 595 (1969); State v. Lehman, 40 Wash.App. 400, 401, 698 P.2d 606, review denied, 104 Wash.2d 1009 (1985); State v. Edwards, 20 Wash.App. 648, 650-51, 581 P.2d 154 (1978); State v. Miller, 7 Wash.App. 414, 417-18, 499 P.2d 241 (1972).
[21] We again emphasize that we are speaking only of a strip search, not of a body cavity search.
[22] See RCW 10.79.100(3) (strip search shall occur "at a location made private from the observation of persons not physically conducting the search[,]" and "shall be performed or observed only by persons of the same sex as the person being searched, except for licensed medical professionals"). Although this statute does not apply here, its provisions provide useful guidance. See also 3 LAFAVE, supra note 5, § 5.3(c) at 131 (strip search may be unconstitutional if unnecessarily offensive).