[No. 31135-6-II.   Division Two.   July 19, 2005.]

THE STATE OF WASHINGTON, *Appellant*, v. MICHAEL E. ORICK, *Respondent*.

*Arthur D. Curtis, Prosecuting Attorney,* and *John P. Fairgrieve, Deputy,* for appellant.

*Steven W. Thayer,* for respondent.

¶1 MORGAN, J. — Based on evidence seized pursuant to a search warrant, the State charged Michael Orick with manufacturing marijuana. The trial court suppressed the evidence and dismissed the case, triggering this appeal by the State. We affirm.

¶2 In August 2002, an informant told Sergeant Brad Chicks that "Mike" from north Clark County was Martin Huddleston's marijuana supplier. Around the same time, another informant gave similar information to Detective

Charles Christensen. Christensen showed one informant a photo of Orick, and the informant said that was "Mike."

¶3 Checking various records, Christensen determined that Michael and Lori Orick owned a home on nine and one-half acres in north Clark County. The home was located at 28500 N.E. Cedar Brook Drive, Yacolt, Washington.

¶4 Christensen drove out and tried to view the home.[1] He found that Cedar Brook Drive was a gravel road. At its entrance were two yellow gateposts, and on each gatepost was a sign that said, "Warning, No Trespassing."[2] Because of these signs, Christensen "did not venture any further."[3] He could not see the house, and "[t]here was no way to do any type of visual property description."[4]

¶5 In October 2002, Christensen asked the Public Utility District (PUD) for its power records on Orick's home. The PUD complied, but its records did not show that an abnormal amount of power was being consumed.

¶6 Christensen knew that PUD records will not reflect actual consumption if power is diverted before it reaches the meter. Thus, in early December he asked a PUD supervisor "to check for a possible diversion."[5] The supervisor agreed and assigned two PUD employees, Russ Harwell and Pat O'Rourke.

¶7 The next day, Harwell and O'Rourke drove to the Oricks' Yacolt property. After passing the "no trespassing" signs and travelling up Cedar Brook Drive, they approached the house and were "immediately confronted" by Lori Orick. She asked what they were doing,[6] and they said they were checking a newly installed meter system with

---

[1] Christensen also arranged for a State Patrol airplane to fly over, but due to the heavy forest canopy, the people observing could not see landmarks or buildings.

[2] Clerk's Papers (CP) at 22.

[3] CP at 22.

[4] CP at 22.

[5] CP at 23.

[6] CP at 23.

which they had been having trouble. When they finished speaking with her, they checked the meter, which showed a normal amount of electrical usage, and then the transformer, which indicated that "a huge amount of electrical power [was] being diverted."[7]

¶8 A week or so later, Christensen submitted a search warrant affidavit in which he used Harwell and O'Rourke's observations to link the informants' information to the Oricks' Yacolt property. The warrant issued, and the ensuing search revealed a marijuana grow operation.

¶9 On December 13, 2002, the State charged Orick with manufacturing marijuana. Before trial, Orick moved to suppress the evidence. The trial court granted the motion and dismissed the case. The State then filed this appeal.

¶10 Although the trial court based its ruling on RCW 42.17.314, we can affirm on any ground.[8] Accordingly, we turn to the dispositive questions in this case.

¶11 The first question is whether the Fourth Amendment and article I, § 7 apply to Harwell and O'Rourke's warrantless entry onto the property. Although the Fourth Amendment and article I, § 7 generally do not apply to a PUD employee, they do when the employee acts at the express request of, and thus jointly and in concert with, a police officer.[9] It is undisputed here that Harwell and O'Rourke were acting at the express request of, and thus jointly and in concert with, Christensen. Hence, the Fourth Amendment and article I, § 7 govern Harwell and O'Rourke's warrantless entry onto the property.

---

[7] CP at 23.

[8] *State v. Jones*, 71 Wn. App. 798, 824, 863 P.2d 85 (1993) ("trial court's exclusion of evidence may be upheld on any proper basis"), *review denied*, 124 Wn.2d 1018 (1994).

[9] *Burdeau v. McDowell*, 256 U.S. 465, 475-76, 41 S. Ct. 574, 65 L. Ed. 1048 (1921); *Corngold v. United States*, 367 F.2d 1, 3-5 (9th Cir. 1966); *In re Pers. Restraint of Maxfield*, 133 Wn.2d 332, 337-38, 945 P.2d 196 (1997); *State v. Krajeski*, 104 Wn. App. 377, 383, 16 P.3d 69, *review denied*, 144 Wn.2d 1002 (2001); *State v. Birdwell*, 6 Wn. App. 284, 288, 492 P.2d 249, *review denied*, 80 Wn.2d 1009, *cert. denied*, 409 U.S. 973 (1972); *State v. Wolfe*, 5 Wn. App. 153, 155, 486 P.2d 1143, *review denied*, 80 Wn.2d 1002 (1971); *Commonwealth v. Dembo*, 451 Pa. 1, 301 A.2d 689, 691 (1973).

¶12 The next question is whether Harwell and O'Rourke's warrantless entry onto the property violated the Fourth Amendment and article I, § 7. The test is the same as if they had been police officers: Did they have probable cause and an applicable exception to the warrant requirement? They did not have probable cause because neither they, Christenson, nor Chicks knew whether the marijuana grow was on this property or somewhere else.[10] They did not have an applicable exception to the warrant requirement, as the circumstances were plainly not exigent. Their entry was unlawful, and the trial court was obligated to suppress it.[11]

¶13 The last question is whether the trial court erred by suppressing the remainder of the evidence that was seized when the warrant was served. The trial court held:

> Without the information of power diversion occurring on the Defendant's property, the affidavit for search warrant did not provide a sufficient nexus between the criminal activity alleged in the search warrant and the Defendant's home. As a result, any and all evidence obtained as a result of the execution of the search warrant on the Orick property would be inadmissible.[12]

We agree and conclude that the trial court was obligated to suppress all evidence seized under the warrant, and that it properly dismissed the case. We need not reach any other issues.

¶14 Affirmed.

QUINN-BRINTNALL, C.J., and VAN DEREN, J., concur.

---

[10] See State v. Thein, 138 Wn.2d 133, 150-51, 977 P.2d 582 (1999); State v. Goble, 88 Wn. App. 503, 512-13, 945 P.2d 263 (1997).

[11] See, e.g., State v. Johnson, 75 Wn. App. 692, 709, 879 P.2d 984 (1994), review denied, 126 Wn.2d 1004 (1995).

[12] CP at 67.