# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  50449-9-II |
| Respondent, | |
| v. | |
| MARVIN EMILE BRANHAM, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Marvin Emile Branham appeals his stipulated facts bench trial conviction for possession of methamphetamine with intent to deliver.  He argues that the trial court erred when it denied the motion to suppress the evidence found in his vehicle because the information in the search warrant affidavit was stale and the search warrant affidavit failed to establish a nexus between the evidence sought and the vehicle searched.  We affirm.[1]

## FACTS

### I.  SEARCH WARRANT

On March 20, 2015, a confidential informant (CI) informed Clallam County Deputy Sheriff Brian D. Knutson that Branham had been selling methamphetamine.  CP at 62-63, 71.  On June

---

[1] In his Statement of Additional Grounds for Review, Branham also asks that we exercise our discretion and not impose appellate costs.  If a cost bill is filed, Branham may then object, and a commissioner of this court may determine whether imposition of costs is warranted.  RAP 14.2. Accordingly, we do not address whether to impose appellate costs at this time.

12, Deputy Knutson requested search warrants authorizing the searches of Branham's residence[2] and a white Cadillac associated with Branham.

In the affidavit for the search warrant for the vehicle, Deputy Knutson stated that on February 26, 2015, he contacted a person who agreed to act as a CI for the sheriff's office. When Deputy Knutson interviewed the CI on March 20, the CI, who had known Branham for approximately 10 years, stated that Branham had been selling methamphetamine in Port Angeles for three or four years. The CI told Deputy Knutson that Branham resupplied his stock of methamphetamine weekly. The CI further stated that between August 2014 and February 2015 he or she had accompanied Branham to Tacoma more than 10 times to pick up methamphetamine. The CI further stated that on February 13, he or she accompanied Branham to Tacoma to purchase $15,000 worth of methamphetamine.

The CI told Deputy Knutson where Branham lived and stated that Branham usually sold his drugs out of his trailer. The CI reported that he or she had seen Branham sell methamphetamine to someone on or about February 22, 2015. The CI also reported having personally purchased methamphetamine from Branham.

The CI further stated that Branham worked at "KNB Auto" and that Branham did not sell drugs at work. Clerk's Papers (CP) at 75. The CI also stated that Branham owned several vehicles and would sometimes take vehicles as payment for drugs. Deputy Knutson listed four different cars that Branham owned, but noted that this list was not exclusive. This list did not include a white Cadillac.

---

[2] Branham does not challenge the search of his residence.

In addition to describing the information that he had gathered during the March 20 interview, Deputy Knutson described sending the CI to Branham's workplace on March 24, 2015 to arrange to purchase methamphetamine on March 25. The CI subsequently purchased methamphetamine from Branham at Branham's residence on March 25 and on March 26. When the CI attempted to purchase more on March 29, Branham said that he did not have any to sell. And when the CI attempted to purchase more on April 9, Branham refused to sell the CI any methamphetamine after the CI declined Branham's invitation to join him in smoking some methamphetamine.

After setting out these facts, Deputy Knutson stated:

> I am requesting the authority to search Marvin Branham's trailer for methamphetamine because I believe there is sufficient probable cause that Branham currently delivers and uses methamphetamine. For instance, on 06/12/15 I talked to [the CI] and they said about two weeks ago they stole two ounces of methamphetamine from Branham while at Branham's trailer. [The CI] said the street value of the two ounces of methamphetamine was about $500. [The CI] said they sold the methamphetamine and made a profit of $1,000. [The CI] said although they took the methamphetamine from Branham, Branham owes them money from past dealings regarding vehicles they had traded and/or sold to one another. [The CI] said they have since talked to Branham and everything is "fine".

> . . . .

> I am requesting the authority to search a vehicle that is known by [the CI] to belong to Branham. On 06/12/15, I talked to [the CI] and I asked [the CI] what kind of vehicle Branham was driving. [The CI] said Branham recently had his white Toyota truck stolen and is now driving a white Cadillac. On 06/10/15, I drove by Branham's work . . . and saw a white 1995 Cadillac Fleetwood 4-Door . . . parked in front of the business. I know from previous contacts with Branham, that Branham parks his vehicle(s) in front of [his work] while attending work. Furthermore, on 06/10/15 at about 1715 hours, Detective Grall from the Olympic Peninsula Narcotics Enforcement Team (OPNET) saw Branham drive the white Cadillac from his work . . . to his home. . . . Despite the white Cadillac having a registered owner other than Branham himself, I have probable cause to believe that Branham has dominion and control of the vehicle based on the above information

and I am requesting the authority to search the vehicle subsequent to Branham's arrest.

CP at 79, 81.

A judge issued search warrants for Branham's residence and the white Cadillac. Officers found eight baggies of methamphetamine inside the Cadillac's trunk.[3]

## II. PROCEDURE

The State charged Branham with unlawful possession of methamphetamine with intent to manufacture or deliver and two counts of unlawful delivery of methamphetamine. Branham moved to suppress the evidence found during the search of his vehicle.

In his motion to suppress, Branham argued that probable cause did not support the search warrant related to the vehicle because the information in the supporting affidavit was stale and because the affidavit did not establish a nexus between the vehicle and the suspected criminal activity. After hearing argument, the trial court denied the motion to suppress.

In its written memorandum opinion and order, the trial court stated,

Although the informant's last successful purchase of methamphetamine from Mr. Branham was in March 2015, given the fact that Mr. Branham had been selling methamphetamine over the course of 3-4 years, combined with the facts that he had methamphetamine in his home on April 9, 2015, as well as on approximately May 30, 2015, the warrants issued weeks later—on June 12, 2015—are not stale. Given the chronicity of Mr. Branham's methamphetamine sales, it is not unreasonable to conclude that if he had methamphetamine in April and late May of 2015 that he likely continued to have methamphetamine in early June 2015.

Although Mr. Branham is correct that there is no evidence specifically linking his white Cadillac with illegal activity, there is ample evidence that vehicles play an integral role in his illegal drug activities. For example, the evidence from the informant is that in the past Mr. Branham routinely drove a white truck to Tacoma to resupply his methamphetamine. Then Mr. Branham's truck was stolen

---

[3] The officers did not find any evidence in the residence.

4

and he began driving the Cadillac. It is not unreasonable to conclude that since Mr. Branham used his truck for illegal drug activities—and then his truck was stolen and he began driving the Cadillac—that the Cadillac is likely to be used for the same purposes the truck was used for.

The court concludes the warrants are not stale and are supported by probable cause.

CP at 37-38.

After the trial court denied the motion to suppress, Branham waived his right to a jury trial and proceeded to a stipulated facts bench trial. The trial court found Branham guilty of unlawful possession of methamphetamine with intent to deliver. Branham appeals. CP at 13.

ANALYSIS

Branham argues that the trial court erred when it denied the motion to suppress the evidence found in vehicle because (1) the information in the search warrant affidavit was stale, and (2) the search warrant affidavit failed to establish a nexus between the evidence sought and the vehicle. We disagree.

I. LEGAL PRINCIPLES

We generally review the validity of a search warrant for an abuse of discretion, giving great deference to the issuing judge. *State v. Neth*, 165 Wn.2d 177, 182, 196 P.3d 658 (2008). But when a trial court assesses a search warrant affidavit for probable cause at a suppression hearing, we review the trial court's conclusion on suppression de novo. *Neth*, 165 Wn.2d at182.

"A search warrant may issue only upon a determination of probable cause, based upon facts and circumstances sufficient to establish a reasonable inference that criminal activity is occurring or that contraband exists at a certain location." *State v. Cole*, 128 Wn.2d 262, 286, 906 P.2d 925 (1995), *overruled on other grounds by In re Detention of Petersen*, 145 Wn.2d 789, 801, 42 P.3d

952 (2002). "'[P]robable cause requires a nexus between criminal activity and the item to be seized, and also a nexus between the item to be seized and the place to be searched.'" *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999) (quoting *State v. Goble*, 88 Wn. App. 503, 509, 945 P.2d 263 (1997)).

When examining the trial court's conclusion, we examine "'whether the qualifying information as a whole amounts to probable cause.'" *State v. Emery*, 161 Wn. App. 172, 202, 253 P.3d 413 (2011) (quoting *Petersen*, 145 Wn.2d at 800), *aff'd*, 174 Wn.2d 741, 278 P.3d 653 (2012). We consider only the information that was available to the issuing judge, and like the trial court, our review "is limited to the four corners of the affidavit supporting probable cause." *Neth*, 165 Wn.2d at 182 (citing *State v. Murray*, 110 Wn.2d 706, 709-10, 757 P.2d 487 (1988); *Wong Sun v. United States*, 371 U.S. 471, 481-82, 83 S. Ct. 407, 414, 9 L.Ed.2d 441 (1963); *State v. Amerman*, 84 Md. App. 461, 581 A.2d 19 (1990)). "'It is only the probability of criminal activity, not a prima facie showing of it, that governs probable cause. The [issuing judge] is entitled to make reasonable inferences from the facts and circumstances set out in the affidavit.'" *Emery*, 161 Wn. App. at 202 (alteration in original) (quoting *State v. Maddox*, 152 Wn.2d 499, 505, 98 P.3d 1199 (2004)).

Additionally, we examine the existence of probable cause on a case-by-case basis. *State v. Thein*, 138 Wn.2d at 149. Individual facts that would not support probable cause when standing alone can support probable cause when viewed together with other facts in the search warrant affidavit. *See State v. Garcia*, 63 Wn. App. 868, 875, 824 P.2d 1220 (1992). The application for a search warrant must be judged in the light of common sense, resolving all doubts in favor of the warrant. *State v. Chenoweth*, 160 Wn.2d 454, 477, 158 P.3d 595 (2007); *Maddox*, 152 Wn.2d at 505-06.

## II. STALENESS ARGUMENT

Branham first contends that the search warrant related to the vehicle was improper because the information in the search warrant affidavit was stale. We disagree.

Whether information in a search warrant affidavit is stale depends on the circumstances of each case. *State v. Lyons*, 174 Wn.2d 354, 361, 275 P.3d 314 (2012). Some length of time naturally passes between observations of suspected criminal activity and the presentation of an affidavit to an issuing magistrate or judge. *Lyons*, 174 Wn.2d at 360. But when the passage of time is so prolonged that it is no longer probable that a search will uncover evidence of criminal activity, the information underlying the affidavit is deemed stale. *Lyons*, 174 Wn.2d at 360-61. In addition to the passage of time, staleness depends on the nature and scope of the alleged criminal activity, the length of the activity, and the type of property to be seized. *See Maddox*, 152 Wn.2d at 506.

Here, the trial court correctly considered the nature and scope of the alleged criminal activity. Although the CI's last successful purchase of methamphetamine from Branham took place about three months before the search warrant was issued, the search warrant affidavit related to the vehicle disclosed that Branham's drug dealing was not just an isolated event. Instead, Branham's drug dealing was a continuing activity that Branham had been engaged in for three or four years. And even though there may have been instances when Branham did not have drugs immediately available, the search warrant affidavit stated that Branham replenished his supply weekly. Given the statements in the affidavit establishing the ongoing nature of Branham's criminal activity, the trial court did not err when it concluded that the information in the search warrant affidavit was not stale.

## III. NEXUS

Branham next argues that the search warrant was improper because the affidavit did not establish a nexus between the drug activity and the Cadillac. Again, we disagree.

The CI told Deputy Knutson that Branham made weekly trips to replenish his supply of methamphetamine and that Branham was currently driving the Cadillac. Resolving all doubts in favor of the warrant, it was a reasonable inference to conclude that if Branham transported his drug supply between Tacoma and his home on a weekly basis that there was a nexus between the vehicle Branham was currently driving, the Cadillac, and his drug activity.

In his Statement of Additional Grounds, Branham further argues that there was no probable cause to search the Cadillac because (1) there was testimony at trial that he did not sell drugs at work, (2) he had borrowed the Cadillac only to travel to and from work and that was the only activity the detective witnessed, and (3) he had only had the Cadillac for less than two days. But the mere fact that Branham may not have sold drugs at work does not necessarily mean that he did not transport drugs in his car. Additionally, there was no evidence at the suppression hearing suggesting that Branham was not using the Cadillac as his personal vehicle. As noted above, the CI told Deputy Knutson that Branham had in the past transported drugs in his car and that he was currently using the Cadillac because his usual vehicle had been stolen. And even presuming that Branham had only been using the Cadillac for less than two days, it is not unreasonable to presume that this would have given Branham time to use the Cadillac to transport drugs. Accordingly, the trial court did not err when it found that there was a nexus between the vehicle and the alleged illegal criminal activity.

No. 50449-9-II

Because the trial court did not err when it found that the information in the affidavit supporting the search warrant was not stale and that there was a nexus between the vehicle and the illegal activity, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, A.C.J.

BJORGEN, J.

9