STATE OF NORTH CAROLINA v. WILLIAM DREYSHALL JOHNSON

No. COA00-308

(Filed 1 May 2001)

**1. Search and Seizure— search warrant—probable cause**

There was probable cause for a warrant to search defendant and an apartment for narcotics where there were two controlled purchases, information provided by several anonymous informants, and independent police corroboration and investigation.

**2. Search and Seizure— narcotics—strip search—warrant not exceeded**

Officers executing a search warrant for narcotics did not exceed the scope of the warrant by performing a strip search of defendant where the warrant was executed for the express purpose of finding controlled substances on the premises or the persons described in the warrant, including defendant; such substances could be readily concealed on the person; an officer testified that there is a trend toward hiding controlled substances in body cavities; the search of the premises had revealed electronic scales and an initial search of defendant had revealed almost $2,000 in small denominations; and the search was done in a reasonable manner in that defendant was taken into his bedroom by two male officers who did not touch him.

**3. Search and Seizure— search warrant—knock and announce—conflicting testimony**

The trial court did not err by finding that officers executing a search warrant complied with the "knock and announce" requirement where there was conflicting testimony; the court gave greater weight to an officer's testimony than to the testimony of defendant's relative, and the officer's testimony was

sufficient to support the finding that the officers complied with the requirement.

Appeal by defendant from judgment entered 15 November 1999 by Judge James R. Vosburgh in Orange County Superior Court. Heard in the Court of Appeals 6 February 2001.

*Attorney General Michael F. Easley, by Assistant Attorney General Douglas W. Hanna, for the State.*

*Appellate Defender Malcolm Ray Hunter, Jr., by Assistant Appellate Defender Constance E. Widenhouse, for defendant appellant.*

BIGGS, Judge.

This appeal arises out of the trial court's denial of defendant-appellant's motion to suppress evidence seized from his person pursuant to a search warrant. Based on the reasoning herein, we affirm the decision of the trial court.

The defendant, William Dreyshall Johnson, was indicted on 1 June 1999 for felonious possession with intent to sell and deliver cocaine, and maintaining a dwelling for keeping and selling cocaine. On 24 May 1999 he filed a motion to suppress physical evidence seized pursuant to a search warrant. The motion to suppress was denied, and on 9 November 1999 defendant filed a written notice appealing the denial of his motion. Reserving his right to appeal the denial of his motion to suppress, defendant pled guilty to charges in the indictment, and following the sentencing, defendant appealed to this Court. On appeal defendant argues three assignments of error. First he contends that the application for the search warrant was insufficient to establish probable cause; second, even if there was probable cause, the scope of the search of the defendant exceeded that contemplated by the warrant and was therefore unreasonable; and third, the trial court's order denying the motion to suppress is based on findings and conclusions that are not supported by the evidence and therefore inadequate as a matter of law. We find these contentions without merit.

On 15 March 1999, Investigator Kevin T. Burgess (Burgess) of the Chapel Hill Police Department submitted an application for a search warrant to District Court Judge Joe Buckner. The warrant identified K-2 Camelot Village Apartments as the property to be searched, and

William Dreyshall Johnson, as one of the persons to be searched. Judge Buckner reviewed the application and issued a warrant which was executed later that day by Burgess and a Special Entry Team (SWAT). During the search, the police recovered two pistol gripped 12 gauge shot guns and a pair of electronic scales from the defendant's apartment. An initial search of the defendant's person revealed almost $2,000.00 in small denominations. The police then asked the defendant to remove his clothing and to bend over at the waist. When he did, the officers saw a piece of plastic protruding from his anus. The officers asked the defendant to remove the package from his anus and found that it contained seventeen (17) individually packaged bags of what was later determined to be crack cocaine. Defendant was charged with possession with intent to sale and deliver cocaine in violation of N.C.G.S. § 90-95(a) (1999), and with intentionally maintaining a dwelling house for keeping and selling a controlled substance in violation of N.C.G.S. § 90-108(a)(7) (1999).

On 24 May 1999, the defendant filed a motion to suppress the evidence seized on the evening of 15 March 1999. Defendant alleged that the evidence was not competent because the warrant was invalid, as it did not establish probable cause for the search. Further, he alleged that the execution of the search warrant was carried out in an unlawful manner, and that the search exceeded the scope of the warrant as issued. The trial court conducted a pre-trial hearing on the motion to suppress evidence seized, and after hearing testimony from both sides, denied defendant's motion. Defendant subsequently pled guilty to all charges, pursuant to a plea bargain. From the order denying defendant's motion to suppress, defendant appeals.

I.

[1] First, defendant contends that Burgess's application failed to establish probable cause to support the issuance of a search warrant. Defendant maintains that the information contained in the affidavit was supplied by a confidential informant and other unnamed sources, and that hearsay of this nature is insufficient to establish probable cause. For these reasons, defendant insists that the evidence obtained in the search should have been excluded. We disagree.

In reviewing the denial of a motion to suppress, our evaluation is "limited to determining whether the trial court's findings of fact are supported by competent evidence and whether the findings of fact in turn support legally correct conclusions of law." *State v. Smith*, 118 N.C. App. 106, 111, 454 S.E.2d 680, 683, *rev'd on other grounds*, 342

N.C. 407, 464 S.E.2d 45 (1995) (citation omitted). In *State v. Arrington*, 311 N.C. 633, 319 S.E.2d 254 (1984), North Carolina adopted the "totality of the circumstances" analysis, for determining whether probable cause exists for the issuance of a search warrant which contains information from an informant. The standard applied is as follows:

> The task of the issuing magistrate is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing]' that probable cause existed.

*Illinois v. Gates*, 462 U.S. 213, 238-39, 76 L. E. 2d 527, 548 (1983) (citation omitted); *State v. Arrington*, 311 N.C. at 638, 319 S.E.2d at 257-58. Great deference should be given to the magistrate's determination of probable cause by the reviewing court. *State v. Arrington*, 311 N.C. at 638, 319 S.E.2d at 258.

"Probable cause exists where 'the facts and circumstances within their [the officers'] knowledge and of which they had reasonable trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *State v. Zuniga*, 312 N.C. 251, 261, 322 S.E.2d 140, 146 (1984) (quoting *Brinegar v. United States*, 338 U.S. 160, 93 L. Ed. 1879 (1949)). Probable cause does not demand the certainty we associate with a formal trial. *State v. Staley*, 7 N.C. App. 345, 349, 172 S.E.2d 293, 295 (1970). "Only the probability and not a *prima facie* showing of criminal activity is the standard of probable cause." *Id.* (citation omitted).

Burgess's application for a search warrant contained, in pertinent part, the following information: In April 1998, the Chapel Hill Police Department, Vice and Narcotics Division began receiving information from a number of anonymous sources that crack cocaine was being sold at K-2 Camelot Village Apartments on Estes Drive. One of these phone calls identified the defendant, William Johnson, as one of the sellers. The Vice and Narcotics Division received approximately ten (10) phone calls implicating this apartment in drug activity. On 28 April 1998, Officer Matt Tauber (Tauber) was dispatched to K-2 Camelot Village Apartments in reference to a drug complaint which

STATE v. JOHNSON

[143 N.C. App. 307 (2001)]

alleged that the defendant was in possession of one-half kilo of cocaine. Tauber went to the apartment to investigate but was denied entry; however, he noted that the defendant was extremely nervous and belligerent.

On 7 July 1998, Officer Will Quick took an anonymous report from a resident of Camelot Village Apartments which stated that the defendant was selling drugs from his apartment. The reportee went on to say that she had been awakened at all times of the night by suspicious persons knocking on the door of Apartment K-2 asking for "twenties."[1] The affidavit also contained information regarding a "controlled purchase"[2] of crack cocaine during the week of 7 March 1999.

Finally, the affidavit provided that on 12 March 1999, Burgess contacted Duke Power, which reported that electrical service for K-2 Camelot Village Apartments had been established in the name of William Drayshell [sic] Johnson since September 1997. Not more than seventy-two (72) hours before the warrant was issued, another "controlled purchase" of crack cocaine was made by a confidential informant at K-2 Camelot Village Apartments. The substance obtained tested positive for crack cocaine.

Applying the "totality of the circumstances" analysis and giving proper deference to the decision of the magistrate, we hold that the two controlled purchases, information provided by several anonymous informants, and independent police corroboration and investigation were sufficient to support the trial court's finding that there was a "substantial basis for concluding" that there was probable cause to issue a search warrant.

II.

[2] Defendant next argues that even if probable cause existed to issue the search warrant, the evidence seized should nevertheless be excluded because the officers exceeded the scope of the war-

---

1. Officer Burgess noted that "twenties", is a common term for one dosage unit of cocaine.

2. A "controlled purchase," as defined by Officer Burgess, consists of a "Confidential Reliable Informant being searched prior to entering a location by an officer to verify that no controlled substances, weapons, or currency are in his or her possession. The C[onfidential] I[nformant] is observed going into, entering, exiting, and coming back to the target location by a surveillance officer. The controlled substances are then transferred to the officer by the C[onfidential] I[nformant], and the C[onfidential] I[nformant] is once again searched for contraband."

rant when they performed a strip search requiring the defendant to move his genitals and spread his buttocks to exhibit his anal area. We disagree.

The Fourth Amendment of the United States Constitution and Article 1 § 20 of the North Carolina Constitution preclude only those intrusions into the privacy of the body which are unreasonable under the circumstances. *State v. Norman,* 100 N.C. App. 660, 663, 397 S.E.2d 647, 649 (1990), *disc. review denied,* 328 N.C. 273, 400 S.E.2d 459 (1991). Evidence obtained in violation of these constitutional rights must be excluded. *State v. Carter,* 322 N.C. 709, 719, 370 S.E.2d 553, 559 (1988). There is no precise definition or mechanical application to determine whether conduct was reasonable in executing the search of a defendant's person. *Bell v. Wolfish,* 441 U.S. 520, 559, 60 L. Ed. 2d 447, 481 (1979). Each case requires a "balancing of the need for the particular search against the invasion of personal rights that the search entails." *Id.* "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.*

In the present case, a search warrant was issued which expressly authorized the search of the defendant. While it is true, as defendant argues, that Officer Burgess did not articulate specific reasons in this application why a strip search was necessary and reasonable under the circumstances; we disagree with defendant's conclusion that the strip search thereby exceeded the scope of the warrant[3]. We further disagree with defendant's contention that the strip search of the defendant and the manner in which it was conducted was outrageously degrading and unreasonable under the circumstance.

The scope of a search warrant is defined by the object of the search and place in which there is probable cause to believe the object will be found. *State v. Carr,* 61 N.C. App. 402, 408, 301 S.E.2d 430, 435, *disc. review denied,* 308 N.C. 545, 304 S.E.2d 239 (1983). The warrant in the case *sub judice,* was executed for the express purpose of procuring controlled substances likely to be found on the premises or on the persons described in the warrant, one of which was the defendant. Such substances could be readily concealed on the person

---

3. While not controlling, the Washington Court of Appeals in *State v. Colin,* 61 Wn. App. 111, 809 P.2d 228, *disc. review denied,* 117 Wash. 2d 1009, 816 P.2d 1223 (1991), addressing the very same issue, held that a strip search of a suspect did not exceed the scope of the warrant authorizing officers to search a person described in the warrant, even though the warrant did not articulate reasons why a strip search was necessary and reasonable under the circumstances.

so that they would not be found without a strip search. Burgess testified at the suppression hearing that there is a trend toward hiding controlled substances in body cavities. In addition, an initial search of defendant revealed almost $2,000 in small denominations, and the search of the premises revealed electronic scales. The scope of the search, while more intrusive than a search of the defendant's outer clothing, was justified by the state's interest in obtaining criminal evidence. In balancing the scope of a search against exigent circumstances in determining reasonableness, the North Carolina Supreme Court has allowed highly intrusive warrantless searches. *See e.g., State v. Smith*, 342 N.C. 407, 464 S.E.2d 45 (1995) (per curiam) (reversing the opinion of the Court of Appeals reported at 118 N.C. App. 106, 454 S.E.2d 680 based on dissent by Walker, J.) (where search involved pulling down defendant's pants far enough that officers could see the corner of a towel underneath defendant's scrotum and where the search took place in the middle of an intersection).

While some states have required a heightened standard to conduct strip searches, neither our Supreme Court nor the United States Supreme Court has articulated such a standard. *See e.g., Hughes v. Commonwealth*, 31 Va. App. 447, 524 S.E.2d 155 (2000) (requiring "special justification" to conduct a strip search); *see also, U.S. v. Holtz*, 479 F.2d 89 (9th Cir. 1973) (requiring objective articulable facts and real suspicion directed specifically at the person to be searched to justify a strip search). Accordingly, we find that the warrant in this case authorized a search of defendant for illegal drugs, and it was not unreasonable under the totality of the circumstances to conduct a strip search.

Moreover, the search was conducted in a reasonable manner. The defendant was taken into his bedroom and searched by two male officers. The officers did not touch defendant, rather they instructed him to bend over and observed as the defendant spread his buttocks and moved his genitals. When the officers observed plastic protruding from the defendant, they asked that he remove the plastic which turned out to contain illegal contraband.

We therefore find that in balancing the need for the search in this case against the defendant's personal rights, the search of the defendant did not exceed the scope of the warrant and was conducted in a reasonable manner.

III.

**[3]** Finally, defendant asserts that the execution of the warrant was unlawful because the officers did not comply with the "knock and announce" requirement. Additionally, the defendant claims that the trial court made no findings of fact regarding this issue and the case should therefore be remanded for consideration on this issue. We disagree.

When executing a warrant, law enforcement officials are required to "knock and announce" their presence before entering the premises unless exigent circumstances exist to justify entry without first knocking. *Wilson v. Arkansas*, 514 U.S. 927, 131 L. Ed. 2d 976 (1995). "If the method of entry by police officers renders a search illegal, the evidence obtained thereby is not competent evidence at the defendant's trial." *State v. Marshall*, 94 N.C. App. 20, 29, 380 S.E.2d 360, 366, *disc. review denied*, 325 N.C. 275, 384 S.E.2d 526 (1989). Upon a motion to dismiss, the trial court hears evidence from both sides to determine whether to admit the evidence seized. N.C.G.S. § 15A-977(d) (1999). "If the motion [to suppress] is not determined summarily the judge must make the determination after a hearing and finding of facts. *Id.* The appellate court's review is limited to determining whether these findings of fact were supported by competent evidence in the record. *State v. Smith*, 118 N.C. App. at 111, 454 S.E.2d at 683.

At the pre-trial motion hearing, Burgess testified that he observed the SWAT team knock on the door and announce their presence and identity, by yelling, "Chapel Hill Police, search warrant." The SWAT team then waited approximately eight to ten seconds before entering the apartment. The officers were dressed in camouflage fatigue bottoms and black shirts that had "Police" written all over the shirts. Michelle Edwards, the defendant's aunt-in-law, testified on behalf of the defendant. She stated that she was sitting near the door when the officer's entered, and that they did not knock or announce their presence before entering the defendant's apartment.

We find that the trial court did in fact make a finding of fact with regard to the execution of the warrant. In the trial court's order denying defendant's motion to suppress evidence, the trial court stated, "[a]nd hearing the testimony of both the police officer and Ms. Edwards, the Court finds that the actual procedure was lawful and reasonable." Further, we find the testimony of Burgess, under this set of facts, was sufficient to support the trial court's finding that the offi-

cers complied with the "knock and announce" requirements. The trial court simply gave greater weight to the testimony of Burgess.

For the reasons stated herein, we affirm the decision of the trial court.

Affirm.

Judges WYNN and McGEE concur.