**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Alexis MARTINEZ, Appellant.**

Superior Court of Pennsylvania.

Argued March 20, 2013.
Filed May 2, 2013.

---

Elliott M. Cohen, Philadelphia, for appellant.

Erik T. Walschburger, Assistant District Attorney, West Chester, for Commonwealth, appellee.

BEFORE: GANTMAN, ALLEN, and OTT, JJ.

OPINION BY ALLEN, J.:

Alexis Martinez ("Appellant") appeals from the judgment of sentence imposed following his convictions for possession with intent to deliver a controlled substance ("PWID"), possession of a controlled substance, possession of a small amount of marijuana, and resisting arrest.[1] We affirm.

The trial court recited the underlying facts and procedural history of this case as follows:

The charges herein arise from incidents which occurred on December 8, 2009, when members of the Pennsylvania State Police conducted a search, including a strip search, of [Appellant].

It is undisputed that the search warrant itself (Commonwealth Exhibit–1) was properly issued and supported by probable cause. The search warrant was based upon information from a confidential informant who advised police that one Michelle Tedesco was going to be taking her source to Brooklyn, New York to obtain a large quantity of heroin. The police corroborated this information by arranging a controlled meeting between the informant and Tedesco, during which the informant provided Tedesco with U.S. currency for the purchase of heroin. The informant advised police that Tedesco would be proceeding to Lancaster to pick up her source, returning with her source to Exton to trade vehicles, and then traveling to New York. The police corroborated this information through surveillance, wherein they observed Tedesco driving alone toward Lancaster and next observed her driving a Dodge Neon with a then unidentified male passenger traveling toward New York. The police applied for and obtained the instant search warrant based upon this information. The search warrant authorized the search of a 2005 Dodge Neon, Michelle Tedesco, and the "person of the unidentified male passenger in the vehicle with Michelle L. Tedesco." The unidentified male passenger was later identified as [Appellant].

The Dodge Neon was thoroughly searched and no heroin was recovered. Tedesco was searched by a female officer and no heroin was recovered. Tedesco admitted she had gone to New York to obtain heroin, but did not know where it was stored. A pat-down search of [Appellant] was conducted and no heroin was recovered. A strip search of [Appellant] was then conducted and [Appellant] began to struggle and resist. Three officers and the use of a taser were necessary to subdue [Appellant]. [Appellant's] pants and underwear were removed and, as a result of the search, the police recovered one clear plastic bag containing 14.5 grams of heroin. The heroin was found underneath [Appellant's] clothing, between his buttocks in the area underneath his scrotum.

\* \* \*

[Appellant was charged with the aforementioned crimes.] Prior to trial, [Appellant] filed a Motion to Suppress and, after a hearing held on April 13, 2011, [Appellant's] Motion was denied.

---

1. 35 P.S. § 780–113(a)(30), (16), and (31), and 18 Pa.C.S.A. § 5104.

On August 22, 2011 [Appellant] filed a Motion for Reconsideration of Denial of the Motion to Suppress, which was denied on August 29, 2011.

\* \* \*

On October 19, 2011, following a stipulated fact bench trial, [Appellant] was found guilty of one count of Possession with Intent to Deliver a Controlled Substance (Heroin), one count of Possession of a Controlled Substance (Heroin), one count of Possession of a Small Amount of Marijuana and one count of Resisting Arrest. At trial, the Commonwealth submitted a stipulation, *Commonwealth Exhibit 1*, attaching the transcript from the April 13, 2011 suppression hearing.

On March 2, 2012, [Appellant] was sentenced to a total of not less than five (5) years nor more than ten (10) years of imprisonment. Specifically, [Appellant] was sentenced as follows:

Count 1: Possession with Intent to Deliver, imprisonment for not less than 5 nor more than 10 years;

Count 3: Possession of a Controlled Substance, merged with Count 1;

Count 4: Possession of a Small Amount of Marijuana, imprisonment for not less than 30 days and nor more than 30 months, concurrent with Count 1;

Count 5: Resisting Arrest, imprisonment for not less than 6 nor more than 24 months, concurrent with Count 1.

\* \* \*

[Appellant] filed a Notice of Appeal on March 6, 2012. On March 6, 2012, we ordered [Appellant] to file a Concise Statement of Errors Complained of on Appeal within twenty-one (21) days. [Appellant] filed his Concise Statement of Matters Complained of on Appeal on March 15, 2012.

Trial Court Opinion, 4/17/12, at 1–3.

On appeal, Appellant presents the following suppression-related issues for our review:

1. Did the search warrant admitted as C1 in the trial court, allow the police to conduct a strip search of [Appellant], consistent with the Fourth Amendment of the Federal Constitution and Article 1, Section 8 of the Pennsylvania Constitution? Alternatively, did the Suppression Court err in denying [Appellant's] Motion to Suppress Physical Evidence and Motion for Reconsideration of the denial of the Motion to Suppress Physical Evidence?

   (a) Was the search warrant one that could be characterized as a warrant authorizing "searches of the person found to be engaging in illegal activity," and thus improper pursuant to Pennsylvania Supreme and Superior Court caselaw?

   (b) Alternatively, was the search warrant one that could [be] characterized as an "all person present" warrant and if so, did the totality of circumstances establish a sufficient nexus between the person to be searched, the location, and the suspected criminal activity, as defined under Pennsylvania Supreme and Superior Court caselaw?

   (c) Did the search warrant in this case vest too much discretion to the state troopers in execution of the search of the [Appellant's] person in violation of the Fourth Amendment of the Federal Constitution and Article 1 Section 8 of the Constitution?

   (d) Did the trial court err in its denial of the Motion for Reconsideration by extending the holding of *Com-*

*monwealth v. Bleigh* [402 Pa.Super. 169], 586 A.2d 450 (Pa.Super.1991) which applies to containers and receptacles where an object may be found and extending it to searches of persons, particularly strip searches?

Appellant's Brief at 4.

Because Appellant's suppression issues are interrelated, we address them together. Our standard of review when reviewing a challenge to the denial of a suppression issue is well-settled:

> [We are] limited to determining whether the factual findings [of the suppression court] are supported by the record and whether the legal conclusions drawn from those facts are correct. [Because] the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Reese,* 31 A.3d 708, 721 (Pa.Super.2011) (citations omitted).

Appellant contends that the search warrant in this case "did not allow the police to conduct a strip search of [Appellant], consistent with the Fourth Amendment of the Federal Constitution and Article 1 Section 8 of the Pennsylvania Constitution." Appellant's Brief at 10. Appellant maintains:

> [W]hile warrants authorizing searches of a person are not generally impermissible, warrants authorizing searches of persons found to be engaging in illegal activity are improper since the issuing magistrate cannot assess this type of

evidence when considering whether to grant the search warrant.

> On the other hand, warrants authorizing searches of "all persons present" may be permissible provided that the totality of the circumstances establishes a sufficient nexus between the person to be searched, the location, and the suspected criminal activity. Under any scenario, the search warrant in the case *sub judice,* fails to provide the requisite probable cause needed to justify a search of [Appellant], particularly a strip search.

*Id.* at 10–11 (internal citations omitted). We are not persuaded by Appellant's argument. In denying Appellant's motion to suppress, the trial court explained:

> At the suppression hearing, the sole issue before the Court was whether the search warrant authorized the strip search of [Appellant] and whether the fruits of the strip search, the controlled substance, should be suppressed. [Appellant] did not challenge the validity of the underlying warrant. However, [Appellant's] contention that the warrant was in fact a warrant authorizing "searches of persons found to be engaging in illegal activity" is inaccurate. The warrant specified the search of Michele L. Tedesco and "the unidentified male passenger" in the Silver 2005 Dodge Neon sedan in which Ms. Tedesco was traveling. The male passenger was identified by a confidential informant to be Ms. Tedesco's source for heroin. The warrant was for a specific male individual, although his name may have been unknown; it was not for any person found to be engaging in illegal activity, nor for any person present. *See Commonwealth v. Hawkins,* 880 A.2d 678 at 680 (Pa.Super.2005); *Commonwealth v. Heidelberg* [369 Pa.Super. 398], 535 A.2d 611 (Pa.Super.1987).

[Appellant] has cited *Commonwealth v. Graciani* [381 Pa.Super. 626], 554 A.2d 560 (Pa.Super.1989), *Commonwealth v. Heidelberg* [369 Pa.Super. 398], 535 A.2d 611 (Pa.Super.1987), *Commonwealth v. Lindsay* [406 Pa.Super. 638], 595 A.2d 86 (Pa.Super.1991), *Commonwealth v. Villego*, 24 D. 8s C. 3rd [Pa. D. & C.3d] 736, 739 (1982) and *Commonwealth v. Eichelberger* [352 Pa.Super. 507], 508 A.2d 589 (Pa.Super.1986) for the proposition that warrants authorizing searches of "all persons present" may be permissible provided that the totality of circumstances establishes a sufficient nexus between the person to be searched, the location, and the suspected criminal activity. Contrary to [Appellant's] argument, none of these cases supports the proposition that the affidavit must establish a nexus to a specific body part of the person being searched. Rather, the nexus addressed in these cases is to the house or car in which all people present are going to be searched.

Generally, when "a search warrant adequately describes the place to be searched and the persons and/or things to be seized, the scope of the search 'extends to the entire area in which the object of the search may be found' and properly includes containers and other receptacles where the object may be secreted." *Commonwealth v. Bleigh* [402 Pa.Super. 169], 586 A.2d 450 at 454 (Pa.Super.1991), *citing United States v. Ross*, 456 U.S. 798, 820–821 [102 S.Ct. 2157, 72 L.Ed.2d 572] (1982). In the instant case, the officers had a valid search warrant authorizing them to search [Appellant's] person. It is reasonable to conclude that controlled substances would be found underneath one's clothing, sometimes tucked near, taped or inside intimate body parts. Furthermore, Troopers Velez, Todaro and Tor-res testified that they have found narcotics on individuals in places other than pockets and clothing, including under the clothing, close to the body and near intimate body parts as the result of conducting a strip search. We, therefore, concluded that the search was lawfully conducted and denied [Appellant's] motion.

Trial Court Opinion, 4/17/12, at 4–6.

The record supports the trial court's factual findings and legal conclusions. We have explained:

> In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the United States Supreme Court established the "totality of the circumstances" test for determining whether a request for a search warrant under the Fourth Amendment is supported by probable cause. In *Commonwealth v. Gray*, 509 Pa. 476, 503 A.2d 921 (1986), this Court adopted the totality of the circumstances test for purposes of making and reviewing probable cause determinations under Article I, Section 8. In describing this test, we stated:
>
>> Pursuant to the "totality of the circumstances" test set forth by the United States Supreme Court in *Gates*, the task of an issuing authority is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.... It is the duty of a court reviewing an issuing authority's probable cause determination to ensure that the magistrate had a substantial basis for concluding that probable cause existed. In so doing, the reviewing court must ac-

cord deference to the issuing authority's probable cause determination, and must view the information offered to establish probable cause in a common-sense, non-technical manner.

\* \* \*

[Further,] a reviewing court [is] not to conduct a *de novo* review of the issuing authority's probable cause determination, but [is] simply to determine whether or not there is substantial evidence in the record supporting the decision to issue the warrant. *Commonwealth v. Torres,* 564 Pa. 86, 764 A.2d 532, 537–38, 540 (Pa.2001).

*Commonwealth v. Jones,* 605 Pa. 188, 988 A.2d 649, 655 (2010).

Contrary to Appellant's appellate argument, at the suppression hearing, Appellant's counsel stated that he was not challenging "the validity of the [search] warrant," nor "contesting the legality of the arrest or [arguing] that [Appellant] was arrested without probable cause." N.T., 4/13/11, at 6–7. Trooper Jose Torres testified that he prepared the application for a search warrant and supporting probable cause affidavit in this case. N.T., 4/13/11, at 75. The search warrant application was partially based on Trooper Torres' own observation of the 2005 Silver Dodge Neon being operated by Tedesco, with Appellant as the front seat passenger, while the vehicle was traveling through the turnpike interchange in Downingtown, Pennsylvania. *Id.* at 73–74.

Trooper Torres' probable cause affidavit supporting the search warrant provided in pertinent part:

10. It is your affiant's opinion, based on the above information and your affiant's training and experience, that Michelle L. Tedesco is currently involved in "On going" criminal activity relative to the trafficking of the controlled substance Heroin. It is your affiant's opinion that Michelle L. Tedesco is currently utilizing the 2005 Silver Dodge Neon Sedan Bearing Pennsylvania Registration GJD 7604, Vin # 1B3ES56C25D202224, to transport her source for heroin to and from New York City and th[e] state of Pennsylvania. It is further your affiant's opinion that there is a fair probability that evidence relative to the sale and trafficking of the controlled substance Heroin will be found with the 2005 Silver Dodge Neon Sedan Bearing Pennsylvania Registration GJD 7604, Vin # 1B3ES56C25D202224, as well as on the person of Michelle L. Tedesco, W-N/F DOB 7/13/83 and the unidentified male who will be a passenger in the 2005 Silver Dodge Neon Sedan with Michelle L. Tedesco. [ ].

11. Based on the time of travel from New York City to the Chester County area of Pennsylvania[,] it is your affiant's opinion that the 2005 Silver Dodge Neon ... being operated by Michelle L. Tedesco and her source for heroin will not be in [the] Chester County area of Pennsylvania until after 10:00 p.m.

Affidavit of Probable Cause, 12/7/09, at 4.

■ The warrant court granted the search warrant authorizing the search of the "person of the unidentified male passenger in the vehicle with Michelle Tedesco," who Trooper Torres had observed during the course of his investigation. *Id.* at 77. While Appellant was generally labeled as the "unidentified male passenger" in the search warrant, a plain reading of the probable cause affidavit supporting the warrant yields a particularized description of Appellant. Specifically, the affidavit set forth that Appellant: (1) was the front seat passenger, and not the driver, of Tedesco's 2005 Silver Dodge Neon; (2) that Tedesco

was transporting her heroin source; (3) that Appellant was Tedesco's traveling companion to and from the New York City area; and (4) that Appellant would be accompanying Tedesco into the Chester County area after 10:00 p.m. *See Id.* at 1–4. The multiple identifying factors for Appellant in the probable cause affidavit supporting the search warrant leads us to agree with the trial court's determination that the search warrant in this case was not a generalized search warrant for "all persons present," nor alternatively, a search warrant for "all persons engaging in criminal activity," as posited by Appellant.

■ We further agree with the trial court's conclusion that the search warrant authorized the strip search of Appellant. While there are no reported Pennsylvania cases directly addressing Appellant's contention that the strip search exceeded the scope of the search warrant of his person, we find instruction in the following decisions.

The term "strip search" generically refers to a variety of searches and search techniques which vary in scope. *See N.G. v. Connecticut,* 382 F.3d 225, 228 n. 4 (2d Cir.2004) (" 'Strip search' is often used as an umbrella term that applies to all inspections of naked individuals."); *see, e.g., Giles v. Ackerman,* 746 F.2d [614], 615–16 [ (9th Cir.1984) ] (describing a "skin search" which involved the removal of clothes and visual inspection of the naked body); *Mary Beth G.* [*v. City of Chicago* ], 723 F.2d [1263], 1267 [ (7th Cir.1984) ] (describing a "visual body cavity inspection" similar to the one at issue in *Bell* [*v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ]); *Spear v. Sowders,* 71 F.3d 626, 629 (6th Cir.1995) (describing a "manual body cavity search," during which officers probed the subject's vagi-

na and anus). Some practices, such as observing a subject during a clothing exchange procedure, instructing a subject to squat and cough while naked, or instructing a subject to insert his or her own fingers into a body cavity, do not fit neatly into one category or another. **In general, however, the precise category of the search is less important than the invasiveness of the techniques employed during the search.** *Stanley v. Henson,* 337 F.3d 961, 964 & n. 2 (7th Cir.2003).

*Allison v. GEO Group, Inc.,* 611 F.Supp.2d 433, 453 n. 12 (E.D.Pa.2009) (emphasis supplied).

The United States Supreme Court has explained:

The Fourth Amendment prohibits only unreasonable searches[.] [ ] The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.

*Bell v. Wolfish,* 441 U.S. 520, 559, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (internal citations omitted).

In affirming a trial court's denial of a motion to suppress the evidence recovered from a strip search and a visual body cavity search of an appellant pursuant to a search warrant, our sister state of Maryland reasoned:

It is well known within the police community generally and expressly acknowledged by the officers in this case, that drug traffickers secrete drugs in their body cavities to avoid detection. Here, the police officers had more than reason-

able, articulable suspicion that appellant, a known drug dealer, would be carrying contraband on his person or in his vehicle; they had a warrant, based on probable cause, authorizing the search of appellant and the vehicle he was driving for drugs. When a search of the vehicle from which appellant was known to distribute drugs and a search of his outer clothing did not reveal any drugs, we are persuaded that a strip search followed by a visual body cavity search was reasonable.

*Moore v. State,* 195 Md.App. 695, 7 A.3d 617, 634–635 (2010) (internal footnote omitted).

In the state of Washington, an appellant posited that "even if a warrant properly authorizes a search of one's person for drugs, it does not properly authorize, without more, a strip search of one's external genitalia." *State v. Hampton,* 114 Wash. App. 486, 60 P.3d 95, 97 (2002). The *Hampton* court expressed:

[Appellant's] premise runs counter to the reasons for which some courts have imposed special requirements for strip searches. A person is "strip searched" if he or she is made to "remove or arrange some or all of his or her clothing so as to permit an inspection of the genitals, buttocks, anus, or undergarments of the person or breasts of a female person." "The intrusion into one's personal dignity occasioned by such searches requires that some justifiable basis exists." Such basis is often lacking when officers search a person at the national border, incident to lawful arrest, or incident to booking, because the officers are not required to have even an articulable suspicion (much less probable cause to believe) that the person is possessing contraband or evidence of crime in or under his or her clothing. **Such a basis is automatically present when officers have obtained an otherwise lawful warrant to search a defendant's person for drugs, for a neutral magistrate will already have determined that the defendant is probably possessing drugs in or under his or her clothing. Accordingly, special safeguards (i.e., safeguards beyond the usual probable cause and warrant requirements) are not needed when officers conduct a strip search pursuant to a warrant based on probable cause to search a defendant's person for drugs.**

*Id.* at 97–98 (internal footnotes and citations omitted) (emphasis supplied).

Likewise, in North Carolina, the search of an appellant was found not to exceed the scope of a search warrant for appellant's person.

The scope of a search warrant is defined by the object of the search and place in which there is probable cause to believe the object will be found. The warrant in the case *sub judice,* was executed for the express purpose of procuring controlled substances likely to be found on the premises or on the persons described in the warrant, one of which was the defendant. Such substances could be readily concealed on the person so that they would not be found without a strip search. [ ] The scope of the search, while more intrusive than a search of the defendant's outer clothing, was justified by the state's interest in obtaining criminal evidence.

*State v. Johnson,* 143 N.C.App. 307, 547 S.E.2d 445, 449 (2001) (internal citations omitted).

Here, three state troopers testified at the suppression hearing: Trooper Noel Valez, Trooper Anthony Todaro, and Trooper Torres. Trooper Valez testified that "based on training, education and experience, knowing [Tedesco and Appellant]

were people who were transporting drugs, hiding them anywhere they can to avoid detection, I believed that [the drugs were] on [Appellant's] person." N.T., 4/13/11, at 31. Trooper Todaro stated that he has "located contraband concealed in body cavities ... [and] ... on male subjects, underneath their scrotum, between their buttocks and even on occasion secreted inside their rectum." *Id.* at 35. Trooper Todaro searched Appellant and discovered heroin and marijuana secreted under Appellant's scrotum. *Id.* at 46. Trooper Torres testified that in searching individuals for drugs, "[i]t's not unusual to find controlled substances concealed ... up against body parts ... [u]nderneath genitals, between the buttocks ... [and] ... [t]hat is the common means for all individuals involved in trafficking and concealing narcotics to do whatever they can to conceal them from being detected." *Id.* at 70–71. Trooper Torres indicated that he has "been a part of hundreds of investigations where those controlled substances were found in those areas." *Id.* Trooper Torres testified that Appellant was "taken into custody" and "searched" ... "pursuant to that search warrant." *Id.* at 80.

In this case, applying the totality of the circumstances test expressed in *Gray,* and mindful of the guiding rationales espoused in *Moore, Hampton,* and *Johnson,* we affirm the trial court's denial of Appellant's motion to suppress, finding that the factors set forth by the United States Supreme Court in *Bell* are met, since there was a justification in performing the strip search, and neither the scope of the intrusion, the manner in which the strip search was conducted, nor the place where it was held was unreasonable.

As in *Moore,* there was a "reasonable, articulable suspicion" that Appellant had concealed contraband either in the 2005 Silver Dodge Neon, or on his person. We are satisfied that a search of the Dodge Neon and of Appellant's person was proper pursuant to the search warrant, which was supported by probable cause. *See Reese,* 31 A.3d at 721; *see also Jones,* 988 A.2d at 655. Since a search of the Dodge Neon and a pat down of Appellant's outer clothing did not yield contraband, we find that a strip search of Appellant, including a search of the area between his buttocks and underneath his scrotum, was reasonable pursuant to the search warrant. *See Moore,* 7 A.3d at 634–635.

Further, the scope of the intrusion was reasonable under the circumstances. *Bell,* 441 U.S. at 559, 99 S.Ct. 1861. As in *Hampton,* we find that a "justifiable basis" existed in this case to intrude into Appellant's personal dignity. *See Hampton,* 60 P.3d at 97–98. The search of Appellant's person pursuant to the search warrant was only as progressively invasive as reasonably required to uncover the contraband. Here, law enforcement personnel conducted a pat down of Appellant's clothing. When the pat down did not reveal contraband, law enforcement personnel removed Appellant's clothes. Appellant's strip search did not progress beyond a visual inspection and a physical external sweep of Appellant's genital area, where contraband was uncovered at that level of intrusion.[2]

We additionally find that the manner in which the search was conducted, and the place where the search was held was not unreasonable. *Bell, supra,* at 559, 99 S.Ct.

---

2. The record does not show that during the search of Appellant's person, law enforcement personnel found evidence suggesting that contraband was present within Appellant's rectum, genitalia, or other body cavity or orifice, such that to uncover contraband, a more invasive, penetrating body cavity search would have been reasonably necessary and authorized by the search warrant under those circumstances.

1861. While law enforcement personnel had to use force to perform the search of Appellant's person because Appellant failed to abide by the troopers' commands, there is no evidence that the force used was excessive or unreasonable under the circumstances. While Appellant was certainly displeased by the search, we do not find that the search was performed with malicious animus to demean Appellant. The search was performed outside of the view of the public, by law enforcement personnel of the same gender as Appellant. Consonant with *Johnson*, the search was "justified by the state's interest in obtaining criminal evidence." *See Johnson*, 547 S.E.2d at 449.

In sum, we find that the progressively invasive search of Appellant's person in this case was authorized by the search warrant of his person, which was supported by probable cause. We further find that Appellant's strip search was performed commensurate with the level of invasion and penetration reasonably necessary to uncover the contraband under the circumstances attending to the search of Appellant's person. Accordingly, we find no error in the trial court's denial of Appellant's motion to suppress, and affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.