# Illinois Official Reports

## Appellate Court

***People v. Jarvis*, 2016 IL App (2d) 141231**

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. RONALD JARVIS, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-14-1231 |
| Filed | February 23, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 13-CF-1409; the Hon. Susan Clancy Boles, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | Joseph H. McMahon, State's Attorney, of St. Charles (Lawrence M. Bauer and Joan M. Kripke, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>Thomas A. Lilien and Bruce Kirkham, both of State Appellate Defender's Office, of Elgin, for appellee. |
| Panel | JUSTICE ZENOFF delivered the judgment of the court, with opinion.<br>Presiding Justice Schostok and Justice Birkett concurred in the judgment and opinion. |

**OPINION**

¶ 1    The State appeals from the judgment of the circuit court of Kane County granting defendant Ronald Jarvis's motion to suppress evidence found during a strip search conducted pursuant to a search warrant. Because the search warrant authorized a search of defendant's person for narcotics, the strip search was within the scope of the warrant and did not violate the fourth amendment to the United States Constitution (U.S. Const., amend. IV), the search-and-seizure clause of article I, section 6, of the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 6), or the privacy clause of article I, section 6 (Ill. Const. 1970, art. I, § 6). Therefore, we reverse and remand.

¶ 2                                          I. BACKGROUND

¶ 3    Defendant was charged by information with one count of manufacture or delivery of 1 or more but less than 15 grams of a controlled substance (cocaine) within 1,000 feet of a school (720 ILCS 570/407(b)(1), 401(c)(2) (West 2012)) (count I), one count of manufacture or delivery of 1 or more but less than 15 grams of a controlled substance (heroin) within 1,000 feet of a school (720 ILCS 570/407(b)(1), 401(a)(2) (West 2012)) (count II), one count of manufacture or delivery of 1 or more but less than 15 grams of cocaine (720 ILCS 570/401(c)(2) (West 2012)) (count III), one count of manufacture or delivery of 1 or more but less than 15 grams of heroin (720 ILCS 570/401(c)(1) (West 2012)) (count IV), one count of possession of less than 15 grams of cocaine (720 ILCS 570/402(c) (West 2012)) (count VII), one count of possession of less than 15 grams of heroin (720 ILCS 570/401(c)(1) (West 2012)) (count VIII), and two counts of aggravated battery of a peace officer (720 ILCS 5/12-3.05(d)(4)(i) (West 2012)) (counts V and VI). Defendant filed a motion to suppress the controlled substances found during the strip search.

¶ 4    The following facts are taken from the hearing on the motion to suppress. On August 1, 2013, Officer Kevin Stankowitz of the Carpentersville police department applied for a warrant to search both defendant and his vehicle. The complaint for the search warrant stated, among other things, that there were reasonable grounds to search "[t]he person" of defendant. The complaint incorporated Officer Stankowitz's affidavit.

¶ 5    The affidavit stated, among other things, that on approximately July 31, 2013, a confidential source purchased MDMA (ecstasy) and heroin from defendant. Both purchases occurred in defendant's car.

¶ 6    The trial court issued a search warrant. The search warrant authorized a search of defendant's vehicle and "[t]he person of [defendant]." The search warrant described the things to be seized as including "[a]ny and all [controlled] substances" and "[p]araphernalia used in the manufacture, processing, delivery or use of a controlled substance."

¶ 7    On August 2, 2013, Officer Stankowitz stopped defendant while defendant was driving the car described in the search warrant. After doing so, Officer Stankowitz had defendant exit the vehicle and showed him the search warrant. He then handcuffed defendant, patted him

down, and searched his pockets. Officer Stankowitz found $90 but no weapons, contraband, or controlled substances.

¶ 8    Officer Stankowitz then had defendant transported to the police station. At the station, defendant was placed in an interview room. The video cameras and the door window were covered to maintain privacy.

¶ 9    Officer Stankowitz told defendant that defendant was going to be strip searched. With Officer Murphy of the Carpentersville police department present, Officer Stankowitz had defendant remove defendant's pants and underwear. After doing so, defendant was "naked from the waist down." Defendant and both officers are male.

¶ 10   Officer Stankowitz, who was behind defendant, asked defendant to squat and cough. According to Officer Stankowitz, one of the reasons for having defendant do so was to "separate the butt cheeks so that [he] could better visually see between them." He added that after defendant squatted he was "better able to see *** between [defendant's] butt cheeks."

¶ 11   While defendant was squatting, Officer Stankowitz could see a piece of toilet paper between defendant's buttocks. As a result, he asked defendant to "squat down further and spread his legs further" so that he could visually examine the piece of toilet paper. When defendant squatted down further, the piece of toilet paper fell to the floor. Inside the toilet paper was a clear plastic baggie containing a controlled substance. When defendant squatted, he did not use his hands to spread his buttocks. Nor did either officer touch defendant's buttocks, anus, or genitals.

¶ 12   Officer Stankowitz admitted that he neither obtained written permission from his supervisor nor completed an authorization form for the strip search. When asked why not, he responded that he did not believe that he needed to do so, because defendant was searched pursuant to the search warrant.

¶ 13   In denying the State's motion for a directed finding, the trial court ruled that the search warrant did not authorize the strip search. The court explained that it had not been provided the affidavit in support of the warrant, which might indicate that "contraband was likely to be contained somewhere on or in the defendant's body." The court added that, if the affidavit established probable cause to that effect, "then the search warrant would have authorized the search."

¶ 14   After the court denied the motion for a directed finding, the State introduced the search warrant, the complaint for the search warrant, the supporting affidavit, and the return. After reviewing those documents, the court granted defendant's motion to suppress. Following the denial of its motion to reconsider, the State filed a certificate of impairment pursuant to Illinois Supreme Court Rule 604(a)(1) (eff. Feb. 6, 2013) and a timely notice of appeal.

¶ 15                               II. ANALYSIS
¶ 16   On appeal, the State contends primarily that the strip search was constitutional because it was within the scope of the search warrant, which authorized a search of defendant's person. Defendant responds that the search violated both the fourth amendment to the United States

Constitution and article I, section 6, of the Illinois Constitution of 1970 because the search warrant and the supporting documents did not specify a strip search.[1]

¶ 17    In reviewing a ruling on a motion to suppress, we greatly defer to the trial court's findings of fact and will reverse those findings only if they are against the manifest weight of the evidence. *People v. Cregan*, 2014 IL 113600, ¶ 22. We review *de novo* the court's legal ruling on whether the evidence should be suppressed. *Cregan*, 2014 IL 113600, ¶ 22.

¶ 18    A defendant bears the burden of proof on a motion to suppress. *Cregan*, 2014 IL 113600, ¶ 23. If a defendant makes a *prima facie* showing that the evidence was obtained illegally, then the burden shifts to the State to provide evidence to counter the *prima facie* case. *Cregan*, 2014 IL 113600, ¶ 23. The ultimate burden of proof, however, remains with the defendant. *Cregan*, 2014 IL 113600, ¶ 23.

¶ 19    At the outset, we emphasize what is not at issue in this case. The strip search did not involve any physical intrusion into defendant's body. Rather, it was limited to a visual examination of the exterior of defendant's body. We recognize that the visual examination of defendant's buttocks might have exposed defendant's anus. However, there was no visual inspection of the interior of defendant's anus, let alone any physical intrusion. Therefore, those cases addressing the propriety of a body-cavity search (see, *e.g.*, *Bell v. Wolfish*, 441 U.S. 520 (1979)), or other physical intrusion into the body (see, *e.g.*, *Winston v. Lee*, 470 U.S. 753 (1985)), are not controlling.

¶ 20    In addressing whether the strip search violated the fourth amendment, we initially note that the police conducted the strip search pursuant to a search warrant.[2] That is significant because the United States Supreme Court has historically expressed a strong preference that police obtain a search warrant before conducting a search. See *United States v. Ventresca*, 380 U.S. 102, 105-06 (1965) (the informed and deliberate determinations of judges empowered to issue warrants are preferred over the hurried actions of police officers, and, in a doubtful or marginal case, a search under a warrant might be sustainable where without one it would fail). We certainly agree. Recognizing that the strip search was conducted pursuant to an otherwise valid search warrant, defendant maintains only that the strip search exceeded the scope of the warrant.

¶ 21    The fourth amendment requires that a search warrant particularly describe both the place to be searched and the person or things to be seized. *People v. Bui*, 381 Ill. App. 3d 397, 410 (2008) (quoting *United States v. Grubbs*, 547 U.S. 90, 97 (2006)). A search warrant is sufficiently descriptive if it enables a police officer executing it, with reasonable effort, to identify the place to be searched. *People v. McCarty*, 223 Ill. 2d 109, 149 (2006). The purpose of the particularity requirement is to guard against overly broad searches and to ensure that the scope of a search is narrowly tailored. *Bui*, 381 Ill. App. 3d at 411 (quoting *Maryland v. Garrison*, 480 U.S. 79, 84 (1987)). In looking for items named in a search

---

[1]On appeal, defendant does not argue alternatively that the search was invalid under section 103-1 of the Code of Criminal Procedure of 1963 (725 ILCS 5/103-1 (West 2012)). Thus, we do not address the State's argument that the exception under section 103-1(j) (725 ILCS 5/103-1(j) (West 2012)) would have justified the search.

[2]Because the strip search was conducted pursuant to a search warrant, those cases addressing challenges to strip searches conducted pursuant to lawful arrests or before incarceration (see *People v. Seymour*, 84 Ill. 2d 24 (1981)) are distinguishable from this case.

warrant, an officer is free to search anywhere it would be reasonable to find the object of the search. *People v. Economy*, 259 Ill. App. 3d 504, 512 (1994).

¶ 22 In deciding whether the strip search exceeded the scope of the search warrant, we begin with the language of the search warrant. We do so because the warrant's description of the place to be searched and the things to be seized is "highly relevant" in determining the permissible scope of a search undertaken pursuant to the warrant. 2 Wayne R. LaFave, Search and Seizure § 4.10(a), at 731 (4th ed. 2004). The warrant specified the places to be searched as including defendant's person. Surely, the term "person" included defendant's body. See Black's Law Dictionary 1178 (8th ed. 2004) ("person" is defined, in part, as the "living body of a human being"). That leads to the question of to what extent the warrant authorized a search of defendant's body.

¶ 23 The warrant specified the items to be seized as including controlled substances. As stated, an officer is allowed to search anywhere it would be reasonable to find the objects named in the warrant. See *Economy*, 259 Ill. App. 3d at 512. It is reasonable to believe that a person who conceals drugs on his body would put them in places, such as between the buttocks, that could be revealed only via a strip search. Therefore, the scope of the warrant authorizing a search of defendant's body for controlled substances necessarily included a strip search that would reveal drugs concealed in such areas of defendant's body. Thus, the strip search, as conducted here,[3] did not exceed the scope of the warrant and did not violate the fourth amendment.

¶ 24 Defendant maintains that the complaint should have sought authorization for, and the search warrant should have expressly authorized, a strip search, as opposed to merely a search of defendant's person. That was unnecessary, however, because, as discussed, the search warrant, which authorized a search of defendant's person for drugs, necessarily included a strip search. Therefore, under the facts of this case, neither the complaint nor the search warrant itself needed to expressly refer to a strip search.

¶ 25 Although there are no Illinois cases deciding whether a search warrant that authorizes the search of a person for drugs includes a strip search, there are several cases from other jurisdictions that have held that strip searches are within the scope of such warrants. See, *e.g.*, *Commonwealth v. Martinez*, 69 A.3d 618, 625-27 (Pa. Super. Ct. 2013); *State v. Hampton*, 60 P.3d 95, 97-99 (Wash. Ct. App. 2002); *State v. Johnson*, 547 S.E.2d 445, 448-50 (N.C. Ct. App. 2001). Although those cases are not binding on this court, we consider them persuasive authority that supports our conclusion that the strip search here was within the scope of the search warrant.

¶ 26 In *Johnson*, the court upheld a strip search, which included a visual examination of the defendant's anus, pursuant to a search warrant that authorized a search of the defendant's person. *Johnson*, 547 S.E.2d at 449-50. The affidavit in that case essentially stated that the defendant was selling crack cocaine from his apartment. *Johnson*, 547 S.E.2d at 448. More importantly, the affidavit did not articulate specific reasons for the need to perform a strip search. *Johnson*, 547 S.E.2d at 449. Nevertheless, the trial court issued a search warrant authorizing a search of the defendant's person. *Johnson*, 547 S.E.2d at 447.

---

[3]We note that defendant does not contend that the strip search was conducted in an unreasonable manner. Indeed, it was not, as it was done in private and by officers of the same sex as defendant, and the officers never touched defendant or invaded his internal body.

¶ 27 In upholding the strip search, which included the defendant moving his genitals and spreading his buttocks, the court held that the search was within the scope of the warrant. *Johnson*, 547 S.E.2d at 449. In doing so, the court recognized that a search for drugs on the person of a suspected drug dealer necessarily includes a strip search, as "[s]uch substances could be readily concealed on the person so that they would not be found without a strip search." *Johnson*, 547 S.E.2d at 449.

¶ 28 We consider the reasoning of *Johnson* particularly persuasive. As explained, it was reasonable to expect that defendant, who the police had probable cause to believe was selling drugs from his car, would conceal those drugs on his person in such places that only a strip search could effectively reveal. Therefore, as in *Johnson*, the strip search, including a visual examination between defendant's buttocks, was within the scope of the search warrant authorizing a search of defendant's person for drugs.

¶ 29 We consider *Martinez* and *Hampton* to further support our holding. Although in each of those cases there was evidence that it would be reasonable to find drugs on a drug dealer's body (see *Martinez*, 69 A.3d at 623 (officers testified that they had found narcotics in other cases "under the clothing, close to the body and near intimate body parts as the result of conducting a strip search"); *Hampton*, 60 P.3d at 96 (officer stated in his supporting affidavit that in his training and experience " 'controlled substance traffickers commonly conceal drugs in their underwear and groin area' ")), in neither case did the court expressly rely on that evidence in reaching its decision that the strip search was within the scope of a search warrant authorizing a search of the person. Nor do we believe that such evidence is necessary to support a strip search pursuant to a warrant authorizing a search of the person. As discussed, if there is probable cause to believe that a suspect has drugs on his person, then it is reasonable to look for them in areas of his body that only a strip search could reveal.

¶ 30 For the foregoing reasons, we hold that the strip search, which was performed pursuant to a search warrant authorizing the search of defendant's person for drugs, was within the scope of the warrant. Therefore, it was reasonable under the fourth amendment.

¶ 31 The strip search was also valid pursuant to the search-and-seizure clause of our state constitution. Our supreme court has held that a limited-lockstep approach applies to analyzing comparable provisions of the state constitution and the federal constitution. *People v. Fitzpatrick*, 2013 IL 113449, ¶ 15. Under that approach, we construe our state constitution as providing greater protection than its federal counterpart only when something in the language of our constitution, or in the debates and the committee reports of the constitutional convention, indicates that the provisions of our constitution were intended to be construed differently from similar provisions in the federal constitution. *Fitzpatrick*, 2013 IL 113449, ¶ 15.

¶ 32 For purposes of article I, section 6, our supreme court has held that the framers intended it to have the same scope as the fourth amendment. *Fitzpatrick*, 2013 IL 113449, ¶ 15 (citing *People v. Caballes*, 221 Ill. 2d 282, 296-97 (2006)). Therefore, the limited-lockstep question is generally settled for search-and-seizure purposes. *Fitzpatrick*, 2013 IL 113449, ¶ 15.

¶ 33 Nonetheless, the limited-lockstep approach allows for consideration of state tradition and values as reflected by longstanding case precedent. *Fitzpatrick*, 2013 IL 113449, ¶ 16. However, that narrow lockstep exception does not apply in this case. Defendant has not pointed to any longstanding state tradition, as reflected in case law, sufficient to justify an interpretation of the search-and-seizure clause of article I, section 6, that would be broader

than the fourth amendment. Nor are we aware of any case recognizing such a tradition. Thus, for the reasons stated in regard to the fourth amendment, the strip search did not violate the search-and-seizure clause of article I, section 6.

¶ 34 Alternatively, defendant maintains that the strip search violated the privacy clause of article I, section 6. For us to so hold, we would have to identify a privacy right implicated by the strip search that was greater than that reflected in the fourth amendment. See *In re May 1991 Will County Grand Jury*, 152 Ill. 2d 381, 390 (1992).

¶ 35 In that regard, defendant contends that there is a heightened right of privacy in certain areas of the body such as the buttocks. In support of that contention, defendant relies on *In re May 1991 Will County Grand Jury* and *People v. Nesbitt*, 405 Ill. App. 3d 823 (2010). However, that reliance is misplaced.

¶ 36 In *In re May 1991 Will County Grand Jury*, our supreme court held that article I, section 6's right of privacy required that a grand-jury subpoena seeking pubic-hair samples must be supported by probable cause. *In re May 1991 Will County Grand Jury*, 152 Ill. 2d at 394. In so holding, the court recognized that the pubic area has been historically regarded "as the most private part of the human body." *In re May 1991 Will County Grand Jury*, 152 Ill. 2d at 395. More importantly, even though the court recognized a privacy right in the pubic area, it recognized that an invasion of that privacy could be justified by a judicial finding of probable cause. Therefore, the court held that, where a grand-jury subpoena for pubic-hair samples was not justified by probable cause, it violated the privacy right embodied in article I, section 6. *In re May 1991 Will County Grand Jury*, 152 Ill. 2d at 395.

¶ 37 In this case, however, although there was a visual examination of private areas of defendant's body, including between his buttocks, the search was done pursuant to a search warrant that was supported by probable cause. Thus, *In re May 1991 Will County Grand Jury* does not support defendant's contention.

¶ 38 Similarly, our decision in *Nesbitt* does not support defendant's privacy argument. In that case, we held that the privacy clause created a right of privacy in personal bank records such that probable cause and a warrant were required for a search of the records. *Nesbitt*, 405 Ill. App. 3d at 828-29. Here, however, Officer Stankowitz supplied the required probable cause and obtained a warrant for the search.

¶ 39 Of course, we recognize that there are external areas of the body, such as the genitals and the buttocks, that are generally considered more private than other areas of the body. Defendant, however, has cited no case, and we are aware of none, holding that an invasion of the privacy in those bodily areas commands something more than a search warrant authorizing a search of the person for drugs.

¶ 40                                    III. CONCLUSION

¶ 41 For the reasons stated, we reverse the judgment of the circuit court of Kane County granting defendant's motion to suppress, and we remand for further proceedings.

¶ 42 Reversed and remanded.